**McCARTER & ENGLISH, LLP**
David R. Kott, Esq.
Joseph G. Braunreuther, Esq.
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 622-4444
dkott@mccarter.com
jbraunreuther@mccarter.com

*Counsel for Kenvue, the Individual
Defendants, and Johnson & Johnson*

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE KENVUE INC. SECURITIES LITIGATION<br><br>This Document Relates To:<br>ALL CASES | Master File No.<br>3-23-cv-20998-ZNQ-JBD |

## DEFENDANTS' REPLY IN SUPPORT OF
## THEIR MOTION TO DISMISS PLAINTIFFS'
## CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..............................................................1

ARGUMENT...................................................................................2

I.   The Opposition Fails To Show Any Material Misstatement........................2

     A.   Plaintiffs' Arguments About Why The Challenged Statements
          Were Misleading Do Not Withstand Scrutiny......................................2

     B.   There Was No Duty To Repeat The Publicly Available
          Information About The NDAC Meeting. ............................................9

     C.   Plaintiffs' Item 105 Argument Does Not Rescue Their Claims. .......15

II.  The Opposition Confirms The Statutory Standing Limitations.................17

     A.   Gruthoff Did Not Allege Facts Supporting Section 11 Standing......17

     B.   The Opposition's Section 12(a)(2) Standing Arguments
          Fall Short. ....................................................................................18

III. The Opposition Identifies No Basis For Control Person Liability. ............20

CONCLUSION.................................................................................20

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*In re 2U, Inc. Sec. Class Action*,
   2021 WL 3418841 (D. Md. Aug. 5, 2021) .........................................................19

*In re Adams Golf, Inc. Sec. Litig.*,
   381 F.3d 267 (3d Cir. 2004) ....................................................11, 12, 13, 14

*In re Amarin Corp. PLC Sec. Litig.*,
   2022 WL 2128560 (3d Cir. 2022) ...................................................................3, 4

*In re Astrazeneca plc Sec. Litig.*,
   2022 WL 4133258 (S.D.N.Y. Sept. 12, 2022) .................................................4, 9

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988)...........................................................................................3

*City of Warwick Ret. Sys. v. Catalent, Inc.*,
   2024 WL 3219616 (D.N.J. June 28, 2024)......................................................4, 6

*De Vito v. Liquid Holdings Grp., Inc.*,
   2018 WL 6891832 (D.N.J. Dec. 31, 2018)........................................................17

*In re Donald J. Trump Casino Sec. Litig.*,
   7 F.3d 357 (3d Cir. 1993) ...............................................................9, 13, 14, 15

*Dutton v. Harris Stratex Networks Inc.*,
   270 F.R.D. 171 (D. Del. 2010) .........................................................................20

*Emerson v. Mut. Fund Series Tr.*,
   393 F. Supp. 3d 220 (E.D.N.Y. 2019)..............................................................20

*Flynn v. Sientra, Inc.*,
   2016 WL 3360676 (C.D. Cal. June 9, 2016).......................................................6

*Goldman Sachs Grp., Inc. v. Ark. Teacher Ret. Sys.*,
   594 U.S. 113 (2021)..........................................................................................14

*Huang v. Avalanche Biotech., Inc.*,
   2016 WL 6524401 (N.D. Cal. Nov. 3, 2016) ......................................................8

*In re Inv. Tech. Grp., Inc. Sec. Litig.*,
   251 F. Supp. 3d 596 (S.D.N.Y. 2017) ....................................................................5

*Jaroslawicz v. M&T Bank Corp.*,
   962 F.3d 701 (3d Cir. 2020) ...............................................................................15

*Lau v. Opera Ltd.*,
   527 F. Supp. 3d 537 (S.D.N.Y. 2021) ................................................................15

*Litwin v. Blackstone Group, L.P.*
   634 F.3d 706 (2d Cir. 2011) ...............................................................................13

*McKenna v. Smart Techs. Inc.*,
   2012 WL 1131935 (S.D.N.Y. Apr. 3, 2012) ......................................................20

*Mehedi v. View, Inc.*,
   2023 WL 3592098 (N.D. Cal. May 22, 2023)....................................................19

*In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*,
   272 F. Supp. 2d 243 (S.D.N.Y. 2003) ...............................................................15

*N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*,
   709 F.3d 109 (2d Cir. 2013) ...............................................................................13

*In re Ocugen, Inc. Sec. Litig.*,
   2024 WL 1209513 (3d. Cir. Mar. 21, 2024)....................................10, 11, 13, 14

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pens. Fund*,
   575 U.S. 175 (2015)........................................................................................4, 8

*In re Petrobras Sec. Litig.*,
   152 F. Supp. 3d 186 (S.D.N.Y. 2016) ...............................................................19

*In re Philip Morris Int'l Inc. Sec. Litig.*,
   2021 WL 4135059 (S.D.N.Y. Sept. 10, 2021) ....................................................8

*In re Rigel Pharms., Inc. Sec. Litig.*,
   697 F.3d 869 (9th Cir. 2012) ...............................................................................8

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004) ...............................................................................15

*Rubke v. Capitol Bancorp Ltd.*,
    551 F.3d 1156 (9th Cir. 2009) ...................................................................15

*Schaeffer v. Nabriva Therapeutics plc,*
    2020 WL 7701463 (S.D.N.Y. Apr. 28, 2020) .......................................6

*Schueneman v. Arena Pharmaceuticals, Inc.*,
    840 F.3d 698 (9th Cir. 2016) ....................................................................7

*SEB Inv. Mgmt. AB v. Endo Int'l, PLC*,
    351 F. Supp. 3d 874 (E.D. Pa. 2018) ....................................................20

*Siracusano v. Matrixx Initiatives, Inc.*,
    585 F.3d 1167 (9th Cir. 2009) ...................................................................5

*In re Venator Mats. PLC Sec. Litig.*,
    547 F. Supp. 3d 624 (S.D. Tex. July 7, 2021) .....................................20

*In re Walmart Inc. Sec. Litig.*,
    2024 WL 1513532 (D. Del. Apr. 8, 2024)..............................................16

*In re Westinghouse Sec. Litig.*,
    90 F.3d 696 (3d Cir. 1996) .....................................................................19

*Wielgos v. Commonwealth Edison Co.*,
    892 F.2d 509 (7th Cir. 1989) .....................................................................9

*In re XP Inc. Sec. Litig.*,
    524 F. Supp. 3d 23 (E.D.N.Y. 2021) .......................................................6

**Regulations**

17 C.F.R. § 229.103 .....................................................................................16

iv

## PRELIMINARY STATEMENT

Plaintiffs' Opposition distills this case to a single question: were Kenvue's IPO and Exchange Offer Registration Statements required to rebroadcast that "the FDA scheduled a meeting" of the NDAC? Opp. 1, 14; *see also id.* 37 ("Defendants could have cured the omissions in this case . . . [by] [s]imply disclosing the pendency of the NDAC meeting.").[1] The answer is no. Reasonable investors were not materially misled because Kenvue's Registration Statements did not repeat the FDA's public notice that an NDAC meeting had been scheduled.

The Opposition admits that every challenged statement was literally true. It acknowledges that none of the statements referenced PE. It concedes that nothing was concealed, and all of the allegedly omitted information was publicly available. Plus, it recognizes that Kenvue extensively warned investors about regulatory risks related to its hundreds of products and thousands of ingredients. That should be the end of the matter under settled securities law principles and Third Circuit case law, including the recent and on-point *Ocugen* decision. Kenvue's SEC filings did not have to reprint public FDA filings, particularly about a meeting of an advisory committee to consider a non-binding recommendation about a citizen petition that was not specific to Kenvue, and that concerned a scientific dispute over the efficacy of an over-the-counter ingredient.

---

[1] Capitalized terms have the same meaning as in Defendants' MTD brief.

Further, the risk on which this case is premised has not even come to pass. The Complaint asserts that the scheduling of the September 2023 NDAC meeting was "significant" because it meant that "regulatory action by the FDA" to "reclassif[y] [PE] as not 'Generally Recognized as Safe and Effective'" was "probable and imminent." *E.g.,* AC ¶¶ 126-27. But as of August 26, 2024, almost a year after the meeting and more than a year after the disclosures at issue, the FDA has not taken any regulatory action and PE retains its GRASE status. If Defendants had told investors in the May and August 2023 Registration Statements that FDA action to reclassify PE was probable and imminent, as the Complaint contends they should have, that would not have been accurate.

Plaintiffs' claims cannot be fixed. There is no way to manufacture a misleading impression about PE from accurate statements that did not reference PE. Nothing will change the fact that the NDAC meeting was publicly announced in an FDA filing, and so did not need to be restated in an SEC filing. Nor is there any reason to believe the pleading deficiencies in statutory standing and control person liability can be cured. The Complaint should be dismissed with prejudice.

## ARGUMENT

I. **The Opposition Fails To Show Any Material Misstatement.**

A. **Plaintiffs' Arguments About Why The Challenged Statements Were Misleading Do Not Withstand Scrutiny.**

Plaintiffs concede that Defendants' statements were "literally true," and

2

argue only that omissions resulted in the statements creating a "misleading impression" about the "risk to Kenvue" of "the FDA reclassify[ing] PE as not GRASE." Opp. 1, 8-10, 20. The Opposition concentrates on a single theory for what gave rise to this alleged misleading impression: the omission of "the scheduling of the NDAC meeting." *See id.* 1, 36-37. It half-heartedly defends one other theory, regarding the omission of certain studies. *See id.* 9. Neither works.

**Plaintiffs' A-Meeting-Was-Scheduled Theory.** The Opposition principally contends that "Defendants' statements read together created a misleading impression" because they "discussed the hypothetical risk of regulatory action while failing to disclose" "the scheduling of the NDAC meeting." *Id.* 16, 19-20, 36-37 ("Defendants could have cured the omissions in this case with a short paragraph describing the scheduled NDAC meeting."). Four flaws undercut this.

*First*, the May 4, 2023, IPO Registration Statement could not have disclosed "the scheduled NDAC meeting" because there was no meeting scheduled at that time. As the Opposition notes, "[o]n March 21, 2023, the FDA postponed the meeting," and it was not until July 12, 2023, that a new meeting was scheduled. *Id.* 5. The IPO Registration Statement claims fall flat under Plaintiffs' own theory.

*Second*, the challenged statements "d[id] not specifically mention PE by name," as the Opposition acknowledges. Opp. 18. This silence means PE was not "put into play"; reasonable investors would not have read the statements to say

3

anything about PE, and therefore would not have received a misleading impression about PE from them. *See, e.g., In re Amarin Corp. PLC Sec. Litig.*, 2022 WL 2128560, at *3 (3d Cir. 2022); *cf. Basic Inc. v. Levinson*, 485 U.S. 224, 239 n. 17 (1988) ("Silence, absent a duty to disclose, is not misleading.").

Plaintiffs maintain that Defendants' opinions put in play "*all* of Kenvue's products." Opp. 18. But "broad representation[s]" like "we believe our products are reliable, safe and effective," *id.*, do not give rise to blanket duties to disclose. *See, e.g., Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pens. Fund*, 575 U.S. 175, 194 (2015). Plaintiffs cite no case holding that such broad claims created a misleading impression about a specific issue that was not referenced. *Cf. Amarin*, 2022 WL 2128560, at *3 (issue is "in play" only if company "has chosen to speak on [that] issue"); *City of Warwick Ret. Sys. v. Catalent, Inc.*, 2024 WL 3219616, at *8 (D.N.J. June 28, 2024) (Quraishi, J.) ("commercial activity at the Brussels location" was "in play" because defendants discussed "that specific issue"); *In re AstraZeneca plc Sec. Litig.*, 2022 WL 4133258, at *7 (S.D.N.Y. Sept. 12, 2022) (statement at "high level of generality" did not put in play "granular information").

*Third*, Plaintiffs misconstrue the statements' text. The Opposition says Defendants warned only of "hypothetical risks." Opp. 19. In fact, the Registration Statements stated that "[c]oncerns about the . . . efficacy of our products or their ingredients . . . have resulted . . . [in] regulatory action," AC ¶¶ 126, 136, and that

4

Kenvue was facing "pending . . . regulatory proceedings," *e.g.,* MTD Ex. C at 26.[2]

The Registration Statements even discussed two proceedings, involving Zantac and acetaminophen. The Opposition attacks those disclosures as "impliedly representing that Defendants were unaware of other undisclosed lawsuits or regulatory proceedings that were currently pending." Opp. 18. Nonsense. The Registration Statements introduced the discussion of those two proceedings with the phrase, "For example." *E.g.,* MTD Ex. C at 45. This unambiguously informed investors those were *not* the only currently pending proceedings, and were merely illustrative. The Registration Statements thus cannot reasonably be read to suggest there were no pending regulatory proceedings about PE. *See*, *e.g.*, *In re Inv. Tech. Grp., Inc. Sec. Litig.*, 251 F. Supp. 3d 596, 607, 616-617 (S.D.N.Y. 2017) (statement defendant is "regularly involved in . . . proceedings" could not "have given a reasonable investor the impression that [it] was not actively involved in investigations," because statement "suggest[s] that regulatory investigations were live and ongoing, rather than merely hypothetical or speculative possibilities").

*Fourth*, the cases Plaintiffs cite are inapposite because they involved only warnings of hypothetical future risks without stating there were pending

---

[2] The Opposition contains other inaccuracies. Among others, it says "Kenvue was already in the crosshairs" of the NDAC meeting. Opp. 19-20. The NDAC meeting was about an ingredient, not any particular company. *Id.* 22-23. Nor was this a "new proceeding[]," *id.*; the citizen petition had been pending since 2015, AC ¶ 88.

proceedings too. *See Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1172, 1181-82 (9th Cir. 2009) (statement that "[w]e may incur significant costs resulting from product liability claims," but in fact such claims "had already been filed"); *Flynn v. Sientra, Inc.*, 2016 WL 3360676, at *11 (C.D. Cal. June 9, 2016) (statement that products "may not be" in compliance, but in fact regulators had already found violations); *Schaeffer v. Nabriva Therapeutics plc*, 2020 WL 7701463, at *4 (S.D.N.Y. Apr. 28, 2020) (statement that compliance failures "may yield" warning letters, but in fact the FDA had already issued one).

This case is more like *XP Inc*. There, the court found no actionable omission where the registration statement said "[w]e are subject to regulatory activity . . . [and] are . . . party to . . . investigations," but did not disclose that a particular regulator had "launched an investigation" or that the company was facing multiple specific "other regulatory actions." *In re XP Inc. Sec. Litig.*, 524 F. Supp. 3d 23, 39 (E.D.N.Y. 2021). The court explained that the statement that government actions existed, without noting specific proceedings, "mirrors those [disclosures] that other courts have held to be unactionable." *Id.*; *see also Warwick*, 2024 WL 3219616, at *9 (Quraishi, J.) (disclosure that FDA compliance failures "could adversely affect" company was not misleading despite allegations of current non-compliance).

***Plaintiffs' Other Theory.*** The Opposition also argues that the Tylenol Studies Statement was misleading because, although it accurately reflected

6

"Defendants' opinion" based on certain studies, the statement did not address other studies Plaintiffs insist "demonstrated that oral PE was not effective." Opp. 9-14.[3]

The fundamental flaw in this theory is that the Tylenol Studies Statement did not purport to address *all* studies. A significant body of case law reflects that there is a critical distinction between statements that address all studies and those that do not. Plaintiffs' case *Schueneman v. Arena Pharmaceuticals, Inc.* illustrates this.

The Opposition cites *Schueneman* for the proposition that "once defendants choose to tout positive information to the market, they are bound to disclose adverse information that cuts against the positive information." Opp. 11 (citing 840 F.3d 698, 706 (9th Cir. 2016) (cleaned up)). But *Schueneman* does not stand for such a general rule. The court emphasized that the statements there represented that "'*all the animal studies that have been completed*'" were positive, and there were "'favorable results *on everything*.'" 840 F.3d at 702, 706 (Ninth Circuit's emphasis). The court held that the company "could not represent that . . . all the data was favorable" when there were studies cutting the other way. *Id.* at 709.[4]

---

[3] Plaintiffs do not reconcile this argument with their position that "disclosing the pendency of the NDAC meeting would have put investors on notice and allowed them to review the underlying petition and medical studies themselves," Opp. 37, implying that the studies Plaintiffs rely on did not need to be separately disclosed.

[4] *Schueneman* cuts against Plaintiffs more broadly: it explains a company "could have remained silent about" a "good-faith scientific disagreement [with] the FDA" leading up to an advisory committee meeting. 840 F.3d at 709. The case also treats materials related to an advisory committee meeting that were, as here, "published . . . on the FDA's website" as publicly available to investors. *Id.* at 703.

This case is not *Schueneman*. Defendants did not say *all* studies showed efficacy (they did not even mention PE). Rather, the Tylenol Studies Statement fits squarely within the cases holding that, where defendants did not claim to address all studies, they had no duty to disclose negative studies. *See, e.g., In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 880 (9th Cir. 2012) (defendants "never claimed that [the reported results] were all of the safety results or that these results included *every* occurrence of every possible side effect"); *In re Philip Morris Int'l Inc. Sec. Litig.*, 2021 WL 4135059, at *11 (S.D.N.Y. Sept. 10, 2021) (no investor "would have interpreted [discussion of some results] as necessarily implying the release of all available, non-clinical, data on the subject"); *Huang v. Avalanche Biotech., Inc.*, 2016 WL 6524401, at *6-8 (N.D. Cal. Nov. 3, 2016) ("Defendants never claimed that the safety data was all the safety results.").[5]

These cases are grounded in the understanding that analysis of the scientific literature is a matter of judgment and opinion, and that reasonable investors understand it is neither desirable nor practicable to require issuers to recite every aspect of every scientific dispute. As the Supreme Court has taught, "a reasonable investor does not expect that every fact known to an issuer supports its opinion," and an opinion "is not necessarily misleading when an issuer knows, but fails to

---

[5] The Opposition asserts these cases "involve facts very different from those here." Opp. 13. This misses the core point in the holdings: the all/some distinction.

disclose, some fact cutting the other way." *Omnicare*, 575 U.S. at 189-90.

Plaintiffs' argument "is akin to saying that the absence of a negative disclosure

gave the impression that there were no negative facts." *AstraZeneca*, 2022 WL

4133258, at \*7. "Were that the standard, every omission would be actionable." *Id*.

### B. There Was No Duty To Repeat The Publicly Available Information About The NDAC Meeting.

The Opposition does not deny that all of the omitted information about the

NDAC meeting was publicly available to reasonable investors, and that this weighs

against materiality. Opp. 26. Plaintiffs contend that the information still needed to

be rebroadcast because it was not "widely disseminated," and because the market

for Kenvue's stock was not efficient. *Id.* 2, 26-36. They are wrong.

***Plaintiffs' Proposed "Widely Disseminated" Test.*** The Opposition cannot

evade the bedrock principle of securities law that "[it] is pointless and costly to

compel firms to reprint information already in the public domain." *Wielgos v.*

*Commonwealth Edison Co.*, 892 F.2d 509, 517 (7th Cir. 1989). This is grounded in

the hornbook test for materiality: an omission is material only if there is "a

substantial likelihood that [the omitted information] would have been viewed by

the reasonable investor as having significantly altered the total mix of information

available." *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 369 (3d Cir.

1993) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438 (1976)).

Information in the public domain is available to reasonable investors, so repeating

9

it would not significantly alter the total mix of available information.

Plaintiffs acknowledge this principle, and the cases setting it out, but argue that the omission of "information that is publicly available, *but not widely disseminated*," is still material. *See, e.g.,* Opp. 2, 31 (emphasis added). This has no grounding in the Supreme Court's and Third Circuit's materiality test. That test looks at the "total mix of information available," not, as Plaintiffs' would rewrite it, the "total mix of information *widely* available."

Regardless, Plaintiffs' "widely disseminated" gloss does not save their claims. It is undisputed and judicially noticeable that the scheduling of the NDAC meeting – and all of the other information the Complaint alleges was omitted – was published by the FDA on the FDA's website, on the Federal Government's Regulations.gov website, and in the Federal Register. *Compare* MTD 4-5, 9-10, 22-23 *and* MTD Exs. B, G, H *with* Opp. 26. The Opposition does not cite any case holding that information published by a federal agency pursuant to federal regulations in order to provide legally-required public notice was *not* part of the total mix of information available to reasonable investors. *See* Opp. 26-36.

Indeed, Plaintiffs' argument is foreclosed by the Third Circuit's *Ocugen* decision from earlier this year. That case addressed Emergency Use Authorization guidance published by the FDA on its website and in the Federal Register (just like

10

the NDAC meeting announcement here).[6] *See In re Ocugen, Inc. Sec. Litig.*, 2024 WL 1209513, at *2-4 (3d. Cir. Mar. 21, 2024). The Third Circuit affirmed dismissal because "the FDA's guidance . . . was readily available to any reasonable investor, so [repetition of that guidance by defendants] would not have significantly altered the mix of information available to a reasonable investor." *Id.* (also saying "Ocugen's efforts" and "information about the quality of the [relevant] study" were "readily available to any reasonable investor," including because the company "submitted a Master File to the FDA"). The decision did not engage in any weighing of whether the FDA had "disseminated" its technical guidance broadly enough, or whether there was any media or analyst coverage of it. The Third Circuit held that the FDA's guidance was public and therefore "readily available to any reasonable investor." *Id. Ocugen* controls this case.

The Opposition relies most heavily on *Adams Golf* to argue that some inquiry is required into whether publicly available information was "widely" or "broadly disseminated." *See* Opp. 29-30 (discussing *In re Adams Golf, Inc. Sec.*

---

[6] *See, e.g.,* fda.gov/emergency-preparedness-and-response/mcm-legal-regulatory-and-policy-framework/emergency-use-authorization#euaguidance; fda.gov/emergency-preparedness-and-response/mcm-legal-regulatory-and-policy-framework/emergency-use-authorization-archived-information#covid19; fda.gov/regulatory-information/search-fda-guidance-documents/enhancing-diversity-clinical-trial-populations-eligibility-criteria-enrollment-practices-and-trial; federalregister.gov/documents/2021/05/27/2021-11234/authorizations-of-emergency-use-of-certain-biological-products-during-the-covid-19-pandemic.

11

*Litig.*, 381 F.3d 267 (3d Cir. 2004)). But *Adams Golf* affirmed dismissal of claims about the omission of "any mention of an industry-wide glut of golf equipment" because the company "was not duty-bound to disclose general industry-wide trends easily discernable from information already available in the public domain." 381 F.3d at 272, 278-79 (also quoting *Acme Propane, Inc. v. Tenexco, Inc.*, 844 F.2d 1317, 1323-24 (7th Cir. 1988), for the proposition that "[t]he securities laws require the disclosure of information that is otherwise not in the public domain").

The *Adams Golf* court did not engage in any analysis of how widely known this "industry-wide glut" was, or whether there were news or analyst reports about it. *See id*. The court merely noted the "industry-wide" information was publicly available. *Compare* Opp. 31 (arguing that the "publicly available documents from the FDA" were "insufficiently disseminated" because Defendants "have not identified any media reports or analyst reports" about them).[7] Moreover, this holding in *Adams Golf* is particularly on-point because the NDAC meeting was also publicly available information about the "entire industry," not Kenvue specifically. Opp. 23. As the Third Circuit emphasized in discussing this holding, the Securities Act requires companies to "reveal *firm-specific* information." 381

---

[7] Nor do Plaintiffs' other cases support an inquiry into the degree of dissemination, or provide any guidance for such an inquiry. Indeed, Plaintiffs provide no reason to believe that, as a practical matter, regulatory filings on the SEC's website are in fact more "widely disseminated" than regulatory filings on the FDA's website.

12

F.3d at 278 (quoting *Wielgos*, 892 F.2d at 517; Third Circuit's emphasis).

Unsurprisingly, the Opposition does not focus on this holding in *Adams Golf*. Instead, it emphasizes dicta in a footnote stating that an "announce[ment] in a single press release before the Company went public, was simply unlike the publicly known or available facts" that other courts held were not material. 381 F.3d at 277 n.10 (cited in Opp. 29). Putting aside that this was not a holding, this footnote does not help Plaintiffs because one press release by a small private company is "simply unlike" multiple public filings by a federal agency. Indeed, *Ocugen* has now made clear that information published by the FDA is part of the total mix of information available to reasonable investors.[8]

And for good reason. Requiring issuers to reprint FDA filings would "bury the shareholders in an avalanche of [] information." *Trump*, 7 F.3d at 369 n.12. There is no real-world benefit from requiring SEC filings that are already hundreds

---

[8] Plaintiffs also emphasize quotes from two Second Circuit financial crisis cases. Opp. 32-33. To the extent the Opposition suggests those cases stand for the proposition that public information about the industry-wide financial crisis had to be disclosed, that is contrary to the Third Circuit's consistent approach from *Adams Golf* through *Ocugen*. Closer scrutiny also shows that the holdings are different than suggested by Plaintiffs. *See Litwin v. Blackstone Group, L.P.* 634 F.3d 706, 719 (2d Cir. 2011) (holding that the "potential future *impact*" on the company from the financial crisis was what was allegedly omitted, and "was certainly not public knowledge" unlike the crisis itself); *N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 127 (2d Cir. 2013) (holding that "neither [news] article discloses what the [plaintiff] alleges" was omitted regarding the issuer's "abandonment of its underwriting guidelines").

13

of pages long – here, more than 1,500 pages – to add a laundry list of every citizen petition, advisory committee meeting, or other regulatory event that could affect the consumer health industry. Yet that is the result Plaintiffs urge.

***Plaintiffs' Efficient Market Argument.*** The Opposition argues at length that the public announcement of the NDAC meeting needed to be reiterated because "the market for Kenvue's stock is not efficient." Opp. 2, 25-36. That's a red herring.

Defendants' argument rests on the test for materiality, which turns on the "total mix of information" available to reasonable investors. *Trump*, 7 F.3d at 377. That test – which is the same for Securities Act and Exchange Act claims – does not depend on the fraud-on-the-market theory of reliance or the efficient market hypothesis undergirding it. The Opposition's attempt to confuse these issues is improper and should be rejected. Materiality must be scrutinized on its own terms, regardless of any conceptual similarities or overlaps with other elements. *Cf. Goldman Sachs Grp., Inc. v. Ark. Teacher Ret. Sys.*, 594 U.S. 113, 118 (2021).

*Adams Golf* confirms this: the Third Circuit affirmed dismissal of a Section 11 claim because information about an "industry-wide" event was publicly available, without any discussion of efficient markets. 381 F.3d at 279. Similarly, *Ocugen* never mentioned market efficiency or the fraud-on-the-market theory when affirming dismissal on materiality grounds based on the public availability of information published by the FDA. *See* 2024 WL 1209513, at *3.

14

Plaintiffs try to distinguish "a number" of Defendants' cases by noting they "included fraud-on-the-market claims." Opp. 27-28, 32. But Plaintiffs point to only one case that referenced efficient markets in the context of materiality. *Id.* 27. The rest of the cases do not even mention, let alone rely on, fraud-on-the-market or the efficient market hypothesis when dismissing Securities Act claims because public information does not need to be repeated in SEC filings. *See, e.g., Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1162-63 (9th Cir. 2009); *Trump*, 7 F.3d at 368 n.10; *Lau v. Opera Ltd.*, 527 F. Supp. 3d 537, 551-55 (S.D.N.Y. 2021); *In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, 272 F. Supp. 2d 243, 249-50 (S.D.N.Y. 2003); *see also Rombach v. Chang*, 355 F.3d 164, 178 n.11 (2d Cir. 2004).

## C.    Plaintiffs' Item 105 Argument Does Not Rescue Their Claims.

The Opposition's fallback position is that, even if the omission of information about the scheduling of the NDAC meeting did not render any statement misleading, it is still actionable because the disclosure was required under Item 105 of Regulation S-K. Opp. 20-23.

As a threshold matter, materiality is a requirement for Item 105 too. But the omission was immaterial as a result of the public FDA filings about the NDAC meeting, and because it involved a meeting of an advisory committee to consider a non-binding recommendation regarding an 8-year-old citizen petition that was not specific to Kenvue and that concerned a scientific dispute over the efficacy (not the

15

safety) of a single ingredient. Item 105 therefore did not mandate disclosure. *See Jaroslawicz v. M&T Bank Corp.*, 962 F.3d 701, 711 n.10 (3d Cir. 2020).

Plaintiffs also admit that "Kenvue made a generic disclosure about risks that might arise from regulatory proceedings relating to efficacy concerns," and they do not deny that the disclosures contained extensive and on-point cautionary language about regulatory risks. Opp. 20-23. That is enough under Item 105. MTD 27-29.

Yet the Opposition asserts that Kenvue was required to disclose the "specific pending regulatory proceeding" because the NDAC meeting was "a known risk factor." Opp. 23. This bare-bones reasoning about a meeting of an advisory body being a "risk factor" misunderstands Item 105, as well as its relationship with the distinct disclosure obligations imposed by Item 103 of Regulation S-K. Item 105 requires disclosure of "risk factors" – it "does not require disclosure of legal proceedings or regulatory enforcement actions." *In re Walmart Inc. Sec. Litig.*, 2024 WL 1513532, at *7 (D. Del. Apr. 8, 2024). Item 103 addresses the disclosure requirements for proceedings, and requires disclosure only of "material pending legal proceedings" "to which the registrant . . . is a party." 17 C.F.R. § 229.103. This reflects the SEC's considered judgment, after notice-and-comment rulemaking, about what specific pending proceedings must be disclosed.

Plaintiffs do not – and could not – contend that the PE citizen petition or the NDAC meeting were required to be disclosed under Item 103, not least because

16

Kenvue was not a party. *See also Walmart*, 2024 WL 1513532, at *10 (non-final regulatory actions are not legal proceedings under Item 103). Yet Plaintiffs effectively advocate for the general Item 105 to trump the specific Item 103. This is especially problematic because Plaintiffs' reasoning would require disclosure of every "pending regulatory proceeding" under Item 105 – after all, any regulatory proceeding carries risk – even if, as here, the proceeding "was not unique to [the company] and presented [only] a risk for the entire industry." Opp. 22-23. Plaintiffs should not be permitted to rewrite Items 103 and 105 to substitute their judgment for the SEC's regarding what legal proceedings must be disclosed.

## II.    The Opposition Confirms The Statutory Standing Limitations.

### A.    Gruthoff Did Not Allege Facts Supporting Section 11 Standing.

Plaintiffs do not dispute the limits of Section 11 standing, including that shares purchased on the open market after the Exchange Offer expired are not traceable. *Compare* MTD 34-35 *with* Opp. 38-41. Rather, the parties' dispute centers on whether the Complaint adequately alleges standing for Plaintiff Gruthoff, and thus for any Exchange Offer Registration Statement claims. The Opposition is wrong on the law and wrong on the facts as alleged.

*First*, it is not "still enough to generally allege" traceability. Opp. 38-40. Plaintiffs may find pleading facts, rather than conclusorily listing elements, to be an "undue burden." *Id.* But that is the law "after *Twombly* and *Iqbal*," and a

17

"general allegation" of traceability is "sufficient no longer." *De Vito v. Liquid Holdings Grp., Inc.*, 2018 WL 6891832, at \*17 (D.N.J. Dec. 31, 2018).

*Second*, Gruthoff did not adequately allege facts supporting traceability. The Opposition says Gruthoff "did not purchase Kenvue shares on the open market" because his certification says he had shares of J&J stock that "were exchanged for" shares of Kenvue stock. Opp. 39. But Gruthoff did not directly and plainly allege that he participated in the Exchange Offer. Instead, he supported the Complaint's conclusory allegation with an artfully drafted certification. And the facts in that certification show that he "received" Kenvue shares 7 days "following" the Exchange Offer's expiration. ECF 38-1. That does not adequately allege that he actually participated in the Exchange Offer. The Opposition cites an August 23, 2023, press release, Opp. 41, but that was not pleaded in the Complaint and does not match the date Gruthoff received his shares either. Any ambiguity is of Gruthoff's own making, and so weighs against the plausibility of his allegation.

**B.    The Opposition's Section 12(a)(2) Standing Arguments Fall Short.**

The Opposition recognizes that Section 12(a)(2) standing turns on whether the Complaint adequately alleges "direct and active participation in the solicitation of the immediate sale" to Plaintiffs on a Defendant-by-Defendant basis. *Compare* MTD 37-39 *with* Opp. 41-43 (both quoting *In re Craftmatic Sec. Litig.*, 890 F.2d 628, 636 (3d Cir. 1989)). But Plaintiffs point to no alleged solicitation activity by

18

any Defendant, let alone facts showing the "crucial . . . direct relationship" between seller and buyer that the Third Circuit requires for Section 12(a)(2) standing. *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 717 & n.19 (3d Cir. 1996).

Instead, the Opposition focuses on Defendants' "financial interests." Opp. 43-44. But as Plaintiffs acknowledge, the Third Circuit requires allegations that each Defendant "'solicited plaintiffs to purchase [Kenvue] securities *and* that in so doing they were motivated by a desire to serve their own financial interests.'" *Id.* 42 (quoting *Westinghouse*, 90 F.3d at 717, alteration in original, emphasis added).

Plaintiffs point to no actions by J&J or the Individual Defendants that satisfy the first prong. *Id.* 43-44. For the Underwriter Defendants, the Opposition vaguely refers only to "a roadshow" and "marketing." *Id.* 43 (citing AC ¶¶ 61-62). But there are 19 Underwriter Defendants, and Plaintiffs do not allege which Underwriters allegedly participated in any roadshow, the nature of their participation, or what role any participation played in the immediate sale to Plaintiffs. Absent such facts, Plaintiffs have alleged nothing more than mere participation, not "direct and active participation." *See In re Petrobras Sec. Litig.*, 152 F. Supp. 3d 186, 195 (S.D.N.Y. 2016) (underwriter solicitation allegations must be "specific"); *In re 2U, Inc. Sec. Class Action*, 2021 WL 3418841, at *27 (D. Md. Aug. 5, 2021) (no allegations plaintiff "purchased shares directly from the Underwriter Defendants, let alone from a specific one"); *Mehedi v. View, Inc.*, 2023

19

WL 3592098, at *12 (N.D. Cal. May 22, 2023) (no allegation "each individual []

Defendant played a direct role" in soliciting plaintiffs); *In re Venator Mats. PLC*

*Sec. Litig.*, 547 F. Supp. 3d 624, 669 (S.D. Tex. July 7, 2021) (no "direct

allegations as to who purchased what securities and from which [defendant]").[9]

### III.    The Opposition Identifies No Basis For Control Person Liability.

Because Plaintiffs have not pleaded an underlying claim, their Section 15

claims should be dismissed. MTD 39-40. The claims against the Individual

Defendants also fail for the independent reason that Plaintiffs rely only on their

positions as officers or directors. Opp. 44-45. Plaintiffs' own cases show this does

not suffice. Those cases involved allegations of affirmative "participat[ion] in the

day-to-day operation and management of the company," which is of particular

significance for director defendants, who generally do not participate in day-to-day

operations. *See SEB Inv. Mgmt. AB v. Endo Int'l, PLC*, 351 F. Supp. 3d 874, 911

(E.D. Pa. 2018); *Dutton v. Harris Stratex Networks Inc.*, 270 F.R.D. 171, 175 (D.

Del. 2010) (both cited in Opp. 44-45). There is nothing like that here.

### CONCLUSION

The Complaint should be dismissed with prejudice.

---

[9] Plaintiffs again cite pre-*Twombly* and *Iqbal* cases to support their position that general allegations of solicitation are sufficient. Opp. 42-43 & n.22. Recent cases, however, overwhelmingly reject that position. *See, e.g.*, *Emerson v. Mut. Fund Series Tr.*, 393 F. Supp. 3d 220, 259-60 (E.D.N.Y. 2019); *McKenna v. Smart Techs. Inc.*, 2012 WL 1131935, at *18 (S.D.N.Y. Apr. 3, 2012).

20

Dated: August 26, 2024

Respectfully submitted,

*/s/ David R. Kott, Esq.*

**McCARTER & ENGLISH, LLP**
David R. Kott, Esq.
Joseph G. Braunreuther, Esq.
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 622-4444
dkott@mccarter.com
jbraunreuther@mccarter.com

**SIDLEY AUSTIN LLP**
Kristen R. Seeger (*pro hac vice*)
John M. Skakun III (*pro hac vice*)
Christopher Lee (*pro hac vice*)
Takayuki Ono (*pro hac vice*)
One South Dearborn
Chicago, IL 60603
(312) 853-7000
kseeger@sidley.com
jskakun@sidley.com
chris.lee@sidley.com
tono@sidley.com

*Counsel for Kenvue, the Individual Defendants, and Johnson & Johnson*

*/s/ Isaac Ashkenazi, Esq.*

**PAUL HASTINGS LLP**
Isaac Ashkenazi, Esq.
Barry G. Sher, Esq. (*pro hac vice*)
Jennifer L. Conn, Esq. (*pro hac vice*)
Zachary Zwillinger, Esq. (*pro hac vice* pending)
200 Park Avenue
New York, NY 10166

21

(212) 318-6000
isaacashkenazi@paulhastings.com
barrysher@paulhastings.com
jenniferconn@paulhastings.com
zacharyzwillinger@paulhastings.com

*Counsel for the Underwriter Defendants*

22