**McCARTER & ENGLISH, LLP**
David R. Kott, Esq.
Joseph G. Braunreuther, Esq.
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 622-4444
dkott@mccarter.com
jbraunreuther@mccarter.com
*Counsel for Kenvue, the Individual*
*Defendants, and Johnson & Johnson*

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE KENVUE INC. SECURITIES LITIGATION<br><br>This Document Relates To: ALL CASES | Master File No. 3-23-cv-20998-ZNQ-JBD |

## DEFENDANTS' BRIEF IN SUPPORT OF
## THEIR MOTION FOR RECONSIDERATION
## OR, IN THE ALTERNATIVE, FOR
## AN ORDER CERTIFYING AN INTERLOCUTORY APPEAL

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................1

LEGAL STANDARD .........................................................................................2

ARGUMENT ......................................................................................................2

I.    The Court Should Reconsider Its Ruling For Three Reasons...................2

      A.    The Opinion Did Not Apply *Ocugen* To Materiality..........................2

      B.    The Opinion Conflicts With The PE MDL Ruling And The FDA's
      Labeling Requirements. .................................................................................4

      C.    The Opinion's Rule On Belief Statements Is Contrary To
      *Omnicare*...................................................................................................6

II.   In The Alternative, The Court Should Certify An Interlocutory Appeal.8

CONCLUSION....................................................................................................9

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Dartell v. Tibet Pharms., Inc.*,
2018 WL 994896 (D.N.J. Feb. 21, 2018) ...........................................................2

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005)............................................................................................9

*Est. of DeRosa v. Murphy*,
2023 WL 11960424 (D.N.J. Dec. 18, 2023) (Quraishi, J.) ............................2, 4

*F.T.C. v. Wyndham Worldwide Corp.*,
10 F. Supp. 3d 602 (D.N.J. 2014), *aff'd*, 799 F.3d 236 (3d Cir.
2015) ...................................................................................................................8

*N.J. Prot. & Advocacy, Inc. v. N.J. Dep't of Educ.*,
2008 WL 4692345 (D.N.J. Oct. 8, 2008) ...........................................................9

*In re Ocugen, Inc. Sec. Litig.*,
2024 WL 1209513 (3d Cir. Mar. 21, 2024)...........................................1, 2, 3, 4

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
575 U.S. 175 (2015)...............................................................................2, 6, 7, 8

*In re Oral PE Mktg. & Sales Pracs. Litig.*,
--- F.Supp.3d ----, 2024 WL 4606818 (E.D.N.Y. Oct. 29, 2024).....................4, 5

*Schueneman v. Arena Pharms., Inc.*,
840 F.3d 698 (9th Cir. 2016) ..............................................................................7

*Spar v. Celsion Corp.*,
2023 WL 2069725 (D.N.J. Feb. 6, 2023) (Quraishi, J.)......................................6

*United States v. Compaction Sys. Corp.*,
88 F. Supp. 2d 339 (D.N.J. 1999).......................................................................4

**Statutes**

21 U.S.C. § 355..........................................................................................................5

28 U.S.C. § 1292 ..................................................................................................2, 8

**Other Authorities**

21 C.F.R. §§ 330.1 ..................................................................................................5

21 C.F.R. § 341.80 ..................................................................................................5

L.Civ.R. 7.1 ..................................................................................................2

## INTRODUCTION

Defendants respectfully request that the Court reconsider its March 24, 2025 Order and Opinion denying the motion to dismiss (ECF 95, 96), or in the alternative certify the Order for an interlocutory appeal. Defendants recognize that this is an exceptional request. They believe it is merited here for three reasons.

*First*, the Opinion did not apply the Third Circuit's *Ocugen* decision to the element of materiality. *Ocugen* held that information published by the FDA is available to reasonable investors, and therefore its omission by securities defendants is not material because such an omission cannot alter the total mix of information available to reasonable investors. That materiality standard is binding and requires dismissal because all of the omitted information here was published by the FDA, just like in *Ocugen*.

*Second*, the Opinion conflicts with the ruling in the related multidistrict litigation regarding phenylephrine ("PE") as well as the FDA's labeling regulation. The PE MDL ruling held that it is ***not*** misleading under the Food, Drug, and Cosmetics Act and FDA regulations to state that PE is "effective" as a "nasal decongestant," including because the FDA's governing regulation (still, as of the filing of this motion) states that PE is an effective nasal decongestant. The Opinion thus means that what the FDA has said is true is, in fact, misleading. That creates an untenable regulatory environment that requires immediate resolution.

*Third*, the Opinion creates a rigid rule that opinion statements about a drug's safety or efficacy must always include references to any contrary studies, regardless of FDA regulatory approval or other context. This cannot be squared with the Supreme Court's *Omnicare* decision.

For each of these reasons, Defendants ask the Court to grant reconsideration and dismiss the Complaint, or to certify an interlocutory appeal.

## LEGAL STANDARD

The Court may reconsider a decision "to correct a clear error of law or fact or to prevent manifest injustice." *Est. of DeRosa v. Murphy*, 2023 WL 11960424, *1 (D.N.J. Dec. 18, 2023) (Quraishi, J.); *see also* L.Civ.R. 7.1(i).

The Court may certify an order for interlocutory appeal if (i) the order involves "a controlling question of law as to which there is substantial ground for difference of opinion," and (ii) the appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see also Dartell v. Tibet Pharms., Inc.*, 2018 WL 994896, at *2 (D.N.J. Feb. 21, 2018).

## ARGUMENT

### I.    The Court Should Reconsider Its Ruling For Three Reasons.

#### A.    The Opinion Did Not Apply *Ocugen* To Materiality.

The Opinion did not apply *Ocugen*'s materiality test or holding to the information omitted from Defendants' statements. Op. 20-24. Instead, the Opinion expressly addressed *Ocugen* only in considering whether the statements were

2

"misleading." *Id.* 21 n.12 (citing *In re Ocugen, Inc. Sec. Litig.*, 2024 WL 1209513 (3d Cir. Mar. 21, 2024)); *compare* ECF 86-1 ("MTD") at 21-27 & ECF 88 ("MTD Reply") at 1, 10-14 (materiality argument). The Opinion evaluated what "a reasonable investor would *know*" about the omitted information and stated that "*Defendants* provided no information whatsoever about the existence of the many clinical studies cited by Plaintiffs." Op. 21 & n.12 (emphasis added). But *Ocugen* is clear that materiality does not turn on **who** publicizes information or what reasonable investors **know**. The test is whether additional disclosure by defendants would have "significantly altered the mix of information **available** to a reasonable investor" **from any source**. 2024 WL 1209513, at *2-4 (emphasis added).

The *Ocugen* standard, which is binding on this Court, requires dismissal. The Opinion concluded that two statements were actionable because they did not disclose that "an NDAC meeting and vote was imminent," and that "some studies existed that disputed . . . that Kenvue products help to relieve nasal congestion." Op. 20-24. It is undisputed (and cognizable now) that all of that omitted information was published by the FDA on its websites and via the Federal Register. *See, e.g.*, Op. 7, 21 (referencing the "public" FDA information); ECF 38 ¶ 93 (Complaint admitting publication on the FDA's website); ECF 87 at 31 (Plaintiffs' brief admitting there were "publicly available documents from the FDA"); *see also* MTD 23 & Ex. B; MTD Reply 10. Under *Ocugen*, information published by the

3

FDA on its websites and via the Federal Register "was readily available to any reasonable investor, so [repetition of the information by defendants] would not have significantly altered the mix of information available to a reasonable investor." 2024 WL 1209513, at *2-4.[1]

*Ocugen*'s holding that information published by the FDA is available to reasonable investors in healthcare companies merits reconsideration. *See, e.g., Murphy*, 2023 WL 11960424, at *1-2 (Quraishi, J.) (reconsideration granted based on further review of Third Circuit decision); *United States v. Compaction Sys. Corp.*, 88 F. Supp. 2d 339, 345-46 (D.N.J. 1999) (same).

### B.     The Opinion Conflicts With The PE MDL Ruling And The FDA's Labeling Requirements.

The Opinion held that it could be misleading under the federal securities laws to state that PE is "effective" or, equivalently, that PE can "help relieve . . . nasal congestion." Op. 20-24. The PE MDL court held the opposite under the federal food and drug laws: "unless and until the FDA amends the monograph in response to the NDAC's findings, it is not misleading to state that PE is an effective nasal decongestant." *In re Oral PE Mktg. & Sales Pracs. Litig.*, --- F.Supp.3d ----, 2024 WL 4606818, *3-7 (E.D.N.Y. Oct. 29, 2024). Defendants submitted the PE MDL decision as supplemental authority and explained the

---

[1] None of *Ocugen*'s analysis referenced or turned on market efficiency. *Cf.* Op. 19.

significance. ECF 91. However, the Court did not address the PE MDL decision or the FDA's labeling requirements, or the conflict of law created by the Opinion.

This conflict urgently requires resolution. PE is regulated by the FDA, and the challenged statements were made in the context of the FDA's regulatory regime. This is important because, as the PE MDL decision noted, "whether a drug is 'effective' is a term of art under the [Food, Drug, and Cosmetics Act], and the statute empowers the FDA, not manufacturers, to make that determination." 2024 WL 4606818, *5. At the time of the challenged statements – and still as of the filing of this motion – the FDA's governing monograph expressly stated that PE is "safe and effective" to relieve "nasal decongestion." *Id.*[2]

Indeed, the conflict is particularly problematic because the regulation affirmatively *requires* manufacturers like Kenvue to make statements just like those that the Court held were actionable. *See id.* (citing 21 C.F.R. §§ 330.1 and 341.80(a), and explaining that the "text's plain meaning is clear that manufacturers

---

[2] Monographs can only be amended through the administrative order process, which generally involves issuance of a proposed administrative order and a period of public comment, followed by issuance of a final administrative order. *See* 21 U.S.C. § 355h(b). In late 2024, the FDA issued a proposed administrative order to change PE's regulatory status. *See* https://tinyurl.com/tupktp7y (FDA website copy of proposed order). That rule is currently subject to public comment, and the FDA has not yet issued a final administrative order. Thus, as of the filing of this motion, PE remains safe and effective under FDA's monograph. *See also, e.g.*, https://tinyurl.com/3xtyvr4u (9/14/23 FDA statement issued immediately after the NDAC's non-binding recommendation, explaining this process).

must include" language regarding effectiveness, as it would be "nonsensical" under the regulatory regime "to sell products labeled as 'nasal decongestants,' so long as the [manufacturers] do not state that the products are effective").[3]

Kenvue and other manufacturers cannot comply with both of these incompatible rules of law. The conflict should be resolved by holding that Defendants' statements would not have misled reasonable investors in light of "the full context" of the FDA's regulatory regime. *See Spar v. Celsion Corp.*, 2023 WL 2069725, at \*6-7 (D.N.J. Feb. 6, 2023) (Quraishi, J.).

## C.    The Opinion's Rule On Belief Statements Is Contrary To *Omnicare*.

The Opinion determined that statements of good faith belief in the efficacy of PE were plausibly misleading because they did not add that "some studies . . . disputed" that belief. Op. 20-21, 23. This ruling cannot be squared with *Omnicare*.

The Supreme Court expressly rejected a brightline rule that any information contrary to securities defendants' beliefs must be disclosed, because "[r]easonable investors understand that opinions sometimes rest on a weighing of competing facts; indeed, the presence of such facts is one reason why an issuer may frame a

---

[3] The Opinion's discussion of, and apparent reliance on, Kenvue's continued labeling of its PE products as "effective" "nasal decongestant[s]" illustrates the issue. Op. 7 (citing allegations about "the product's packaging" and the "products' websites" as of March 8, 2024). Those statements were legally required at that time – and still today – as explained by the PE MDL decision.

6

statement as an opinion." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus.*

*Pension Fund*, 575 U.S. 175, 189-90 (2015) (also stating that "[a] reasonable

investor does not expect that *every* fact known to an issuer supports its opinion").

Disclosure of contrary underlying information is required ***only*** if that information

would render the opinion "misleading to a reasonable person reading the statement

fairly and in context." *Id.* at 194. Careful application of *Omnicare* is especially

important when considering opinions about science and in the context of regulatory

regimes. No reasonable investor in an FDA-regulated healthcare company

understands a statement that a drug is believed to be safe and effective to

necessarily mean that every scientific study about that drug has been uniformly and

unequivocally positive. *Cf. id.* (addressing an example of when contrary

information about a belief regarding legal compliance need not be disclosed).[4]

Notably, the Opinion does ***not*** conclude that it is unreasonable to believe that

PE is effective based on the total body of scientific evidence – nor would such a

---

[4] The Opinion cites *Schueneman v. Arena Pharms., Inc.*, but that case supports Defendants' position. *Schueneman* involved statements that expressly represented that "*all*" studies were positive. *See* 840 F.3d 698, 707-08 (9th Cir. 2016) (statements asserted that "all the animal studies" had "favorable results on everything"). The Ninth Circuit explained that this specific, absolute representation was the critical factor that triggered a requirement to disclose a negative study. *Id.* at 708 ("[W]hat [Defendants] could not do was express confidence by claiming that all of the data was running in [their] favor."). Defendants in this case made no such representation about "all" studies. *See* MTD 20-21 (explaining this distinction further and citing case law upholding it).

conclusion be supportable given the FDA's still-governing monograph. *See* Op. 6-7

(also acknowledging that there are studies supporting PE's efficacy). So it is only

the "mere fact" the contrary studies existed that required their disclosure according

to the Opinion. *Id.* at 21. This approach requires disclosure of *every* contrary study

in order to preclude litigation of good faith beliefs about the efficacy (or safety) of

FDA-approved products. That is a rigid, untenable rule that *Omnicare* rejects.

## II.    In The Alternative, The Court Should Certify An Interlocutory Appeal.

If the Court does not grant reconsideration, Defendants respectfully request

that it certify each of the issues above for interlocutory appeal under § 1292(b).

Each issue involves a discrete, controlling legal question:

- Whether *Ocugen*'s materiality standard applies and demands treating information published by the FDA as available to reasonable investors.

- Whether statements that are not misleading under the federal food and drug laws can be misleading under the federal securities laws.

- Whether opinions of safety or efficacy must disclose any contrary study.

For all the reasons discussed above, there are substantial grounds for

differences of opinion about these questions. And resolution by the Third Circuit

now would terminate the litigation and avoid expensive and time-consuming

discovery and class certification proceedings. *See* 28 U.S.C. § 1292(b); *see also,*

*e.g.*, *F.T.C. v. Wyndham Worldwide Corp.*, 10 F. Supp. 3d 602, 633-34 (D.N.J.

2014) (§ 1292(b) is satisfied when legal questions are "serious to the conduct of

the litigation in a practical or legal sense," and "reasonable jurists [could] differ"

on them), *aff'd*, 799 F.3d 236 (3d Cir. 2015); *N.J. Prot. & Advocacy, Inc. v. N.J. Dep't of Educ.*, 2008 WL 4692345, at *3 (D.N.J. Oct. 8, 2008) ("Certification is more likely to materially advance the litigation where the appeal occurs early in the litigation, before extensive discovery has taken place.").

Certification of an interlocutory appeal is particularly warranted because of the practical implications of the Opinion for healthcare and life science companies regulated by the FDA. Such companies often have hundreds, if not thousands, of ingredients, drugs, and products that are subject to uncountable numbers of studies, petitions, and regulatory interactions, determinations, and proceedings across the world. *See generally* MTD 26-27; MTD Reply 13-14. The Opinion's resolution of each of the three legal questions proposed for certification puts Kenvue and similar companies in an impossible situation. Avoiding securities liability would simply not be achievable, and the federal securities laws would be transformed into a system of investor insurance, contrary to the Supreme Court's instruction. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court reconsider its Opinion and Order, and grant the motion to dismiss in full. In the alternative, Defendants request that the Court certify an interlocutory appeal.

Dated: April 7, 2025

Respectfully submitted,

*/s/ David R. Kott, Esq.*

**McCARTER & ENGLISH, LLP**
David R. Kott, Esq.
Joseph G. Braunreuther, Esq.
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 622-4444
dkott@mccarter.com
jbraunreuther@mccarter.com

**SIDLEY AUSTIN LLP**
Kristen R. Seeger (*pro hac vice*)
John M. Skakun III (*pro hac vice*)
Maseeh Moradi (*pro hac vice to be filed*)
One South Dearborn
Chicago, IL 60603
(312) 853-7000
kseeger@sidley.com
jskakun@sidley.com
mmoradi@sidley.com

*Counsel for Kenvue, the Individual Defendants, and Johnson & Johnson*

*/s/ Isaac Ashkenazi, Esq.*

**PAUL HASTINGS LLP**
Isaac Ashkenazi, Esq.
Barry G. Sher, Esq. (*pro hac vice*)
Jennifer L. Conn, Esq. (*pro hac vice*)
200 Park Avenue
New York, NY 10166
(212) 318-6000
isaacashkenazi@paulhastings.com
barrysher@paulhastings.com

10

jenniferconn@paulhastings.com

*Counsel for the Underwriter Defendants*