James E. Cecchi
Donald A. Ecklund
Kevin G. Cooper
**CARELLA BYRNE CECCHI, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
Email: jcecchi@carellabyrne.com

*Liaison Counsel for Plaintiffs*

Robert V. Prongay
Leanne H. Solish
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

*Lead Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re KENVUE INC. SECURITIES LITIGATION<br><br>This Document Relates To:  ALL CASES | Case No.: 3:23-cv-20998-ZNQ-JBD |

# PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, FOR AN ORDER CERTIFYING AN INTERLOCUTORY APPEAL

## **TABLE OF CONTENTS**

I.   INTRODUCTION.................................................................................1

II.  THE COURT SHOULD DENY THE MOTION TO RECONSIDER ..............1

    A.   *Ocugen* Does Not Provide A Basis For Reconsideration .....................2

        1. *Ocugen* Is Not Controlling And The Court Did Not Overlook It ....2

        2. The Court Correctly Applied The Proper Materiality Standard.......4

    B.   The PE MDL Case Does Not Provide A Basis For Reconsideration ...9

    C.   *Omnicare* Does Not Provide A Basis For Reconsideration................10

III. THE COURT SHOULD DENY DEFENDANTS' § 1292(b) MOTION ........12

IV.  CONCLUSION .................................................................................15

i

# TABLE OF AUTHORITIES

**CASES**

*Altisource S.A.R.L. v. Szumanski*,
2023 WL 6797695 (D.N.J. Mar. 15, 2023)........................................................12

*Blueprint Cap. Advisors, LLC v. Murphy*,
2023 WL 6875136 (D.N.J. Oct. 18, 2023) .........................................................3

*Cadillo v. Stoneleigh Recovery Assocs., LLC*,
2018 WL 702890 (D.N.J. Feb. 2, 2018) ............................................................12

*In re Adams Golf, Inc. Sec. Litig.*,
381 F.3d 267 (3d Cir. 2004)............................................................ *passim*

*In re Direct Purchaser Insulin Pricing Litig.*,
2023 WL 3431213 (D.N.J. May 12, 2023)...................................... 14, 15

*In re Kenvue Inc. Sec. Litig.*,
2025 WL 889640 (D.N.J. Mar. 24, 2025).................................... *passim*

*In re Merck & Co., Inc. Sec. Litig.*,
432 F.3d 261 (3d Cir. 2005).............................................................13

*In re NAHC, Inc. Sec. Litig.*,
306 F.3d 1314 (3d Cir. 2002)...........................................................4, 5

*In re Ocugen, Inc. Sec. Litig.*,
2024 WL 1209513 (3d Cir. Mar. 21, 2024).....................................2, 5

*In re Schering-Plough Corp.*,
2010 WL 2546054 (D.N.J. June 21, 2010).........................................13

*Johnson v. Nat'l Collegiate Athletic Ass'n*,
108 F.4th 163 (3d Cir. 2024) ...........................................................12

*Julius Realty Corp. v. Thompson*,
2023 WL 2728786 (D.N.J. Mar. 31, 2023).........................................1

*Krishanthi v. Rajaratnam*,
  2011 WL 1885707 (D.N.J. May 18, 2011)................................................................1

*Lipani v. Aetna Life Ins. Co.*,
  2025 WL 32791 (D.N.J. Jan. 6, 2025)...................................................................2

*McKinney v. Ryan*,
  2024 WL 687618 (D.N.J. Feb. 20, 2024) .............................................................1, 2

*Mudey v. United States*,
  2011 WL 2936781 (D.N.J. July 19, 2011)..............................................................4

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
  575 U.S. 175 (2015)................................................................................ 10, 11

*Oran v. Stafford*,
  226 F.3d 275 (3d Cir. 2000)..............................................................................13

*Sun Life Assurance Co. of Canada v. Wells Fargo Bank, N.A.*,
  2023 WL 3309355 (D.N.J. May 8, 2023).................................................................13

*The Winer Fam. Tr. v. Queen*,
  2004 WL 2203709 (E.D. Pa. Sept. 27, 2004) ..........................................................6

*TSC Indus., Inc. v. Northway, Inc.*,
  426 U.S. 438 (1976).....................................................................................4, 5

*Weiner v. Quaker Oats Co.*,
  129 F.3d 310 (3d Cir. 1997)............................................................................13

**STATUTES**

28 U.S.C. § 1292(b) .................................................................................. 12, 13

| Glossary of Defined Terms | |
|---|---|
| **Term** | **Definition** |
| CAC or Complaint | Plaintiffs' Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws (ECF 38) |
| Company | Defendant Kenvue Inc. |
| Defendants | Kenvue, Johnson & Johnson, Thibaut Mongon, Paul Ruh, Heather Howlett, Larry Merlo, Richard E. Allison, Jr., Peter M. Fasolo, Tamara S. Franklin, Seemantini Godbole, Melanie L. Healey, Betsy D. Holden, Vasant Prabhu, Michael E. Sneed, Joseph J. Wolk, Goldman Sachs & Co. LLC, J.P. Morgan Securities LLC, BofA Securities Inc., Citigroup Global Markets Inc., Deutsche Bank Securities Inc., HSBC Securities (USA) Inc., RBC Capital Markets LLC, BNP Paribas Securities Corp., UBS Securities LLC, BBVA Securities Inc., ING Financial Markets LLC, Intesa Sanpaolo S.p.A., Santander US Capital Markets LLC, UniCredit Capital Markets LLC, Academy Securities, Inc., Independence Point Securities LLC, Samuel A. Ramirez & Co. Inc., R. Seelaus & Co. LLC, and Siebert Williams Shank & Co. LLC |
| FDA | The United States Food and Drug Administration |
| FDCA | The Federal Food, Drug, and Cosmetic Act |
| Kenvue | Defendant Kenvue Inc. |
| Motion | Defendants' Motion for Reconsideration or, in the Alternative, for an Order Certifying an Interlocutory Appeal (ECF 100) |
| Mot. | Defendants' Brief in Support of Their Motion for Reconsideration or, in the Alternative, for an Order Certifying an Interlocutory Appeal (ECF 100-1) |
| MTD | Defendants' Brief in Support of Their Motion to Dismiss Plaintiffs' Consolidated Amended Class Action Complaint (ECF 86-1) |
| NDAC | The FDA's Nonprescription Drugs Advisory Committee |
| NSA | Defendants' Letter notifying the Court to supplemental authority (ECF 91) |
| NSA Response | Plaintiffs' Letter responding to Defendants' NSA (ECF 92) |
| Opinion | The Court's Opinion denying Defendants' Motion to Dismiss the Complaint (ECF 95) |
| Opp. | Plaintiffs' Opposition to Defendants' Motion to Dismiss Plaintiffs' Consolidated Amended Class Action Complaint (ECF 87) |
| PE | Phenylephrine |
| PE MDL | *In re Oral Phenylephrine Marketing and Sales Practices Litigation*, No. 23-MD-3089-BMC |

| Plaintiffs | Lead Plaintiff Joseph Ditta and additional plaintiff David Gruthoff |
| Reply | Defendants' Reply in Support of Their Motion to Dismiss Plaintiffs' Consolidated Amended Class Action Complaint (ECF 88) |
| SEC | The United States Securities and Exchange Commission |
| Securities Act | The Securities Act of 1933 |

## I.    INTRODUCTION

Defendants' Motion falls short of the high bars for reconsideration or certification for interlocutory appeal.[1] Defendants do not identify any controlling decision or relevant fact that the Court overlooked in denying Defendants' motion to dismiss. Instead, Defendants merely repackage arguments the Court already considered and rejected. Defendants' disagreement with the Court's application of settled law to the facts of this case does not warrant reconsideration or an early appeal, which would merely delay this case and waste judicial and party resources.

## II.    THE COURT SHOULD DENY THE MOTION TO RECONSIDER

"Relief by way of a motion for reconsideration is an extraordinary remedy, only to be granted very sparingly." *McKinney v. Ryan*, 2024 WL 687618, at *2 (D.N.J. Feb. 20, 2024). Reconsideration "is inappropriate where the motion merely raises a party's disagreement with the Court's decision or seeks to rehash arguments already raised and rejected." *Krishanthi v. Rajaratnam*, 2011 WL 1885707, at *2 (D.N.J. May 18, 2011). Reconsideration will only be granted where "(1) an intervening change in the law has occurred, (2) new evidence not previously available has emerged, or (3) the need to correct a clear error of law or prevent a manifest injustice arises." *Julius Realty Corp. v. Thompson*, 2023 WL 2728786, at *3 (D.N.J. Mar. 31, 2023).

---

[1] Capitalized terms are defined in the Glossary. Unless indicated, all emphasis has been added and citations are cleaned up.

1

"To demonstrate a clear error, a party must do more than allege that portions of a ruling were erroneous." *Lipani v. Aetna Life Ins. Co.*, 2025 WL 32791, at *2 (D.N.J. Jan. 6, 2025). Instead, the movant must show that the challenged holdings "(1) were without support in the record, or (2) would result in manifest injustice if not addressed." *Id.* The movant also must show that "a dispositive factual matter or controlling decision of law was overlooked by the court in reaching its prior decision." *McKinney*, 2024 WL 687618, at *2 (citing L. Civ. R. 7.1(i)). Defendants make none of these showings.

## A.    *Ocugen* Does Not Provide A Basis For Reconsideration

Defendants argue that the Court should reconsider its decision because it "did not apply *Ocugen*'s materiality test or holding to the information omitted from Defendants' statements." Mot. 2 (citing *In re Ocugen, Inc. Sec. Litig.*, 2024 WL 1209513 (3d Cir. Mar. 21, 2024)). This argument fails for multiple reasons.

### 1.    *Ocugen* Is Not Controlling And The Court Did Not Overlook It

***First***, *Ocugen* is not binding precedent. The unpublished decision explicitly states that it "is not an opinion of the full Court and, pursuant to I.O.P. 5.7, ***does not constitute binding precedent***." *Ocugen*, 2024 WL 1209513, at n.*. While this Court may consider non-precedential Third Circuit opinions as persuasive authority, such decisions do not constitute "controlling decisions" for reconsideration purposes. *See* L. Civ. R. 7.1(i) (party moving for reconsideration must set forth "the matter or ***controlling decisions*** which the party believes the Judge has overlooked").

2

***Second***, even if *Ocugen* controlled, this Court did not "overlook" it. The Court directly addressed *Ocugen* and distinguished it because "Ocugen disclosed a 'great deal of information about its departures from FDA guidance' including 'data about' clinical studies." *In re Kenvue Inc. Sec. Litig.*, 2025 WL 889640, at *11 n.12 (D.N.J. Mar. 24, 2025). In contrast, "Defendants provided no information whatsoever about the existence of the many clinical studies cited by Plaintiffs that could inform investors about the safety and efficacy risks of PE." *Id.*

Defendants argue that the Court addressed only falsity and not materiality. Mot. 2-3. Not so. The Court held that Plaintiffs adequately pled ***both*** that the challenged statements were misleading ***and*** that the omissions were material. *Kenvue*, 2025 WL 889640, at *11. The Court noted that an NDAC meeting and vote on the effectiveness of PE was "imminent" and that this information "may have been important to a reasonable investor." *Id*. The Court also held that "the mere fact that the FDA and NDAC were reviewing PE may have been ***crucial to a reasonable investor's decision to invest*** in Kenvue." *Id.* Thus, the Court held that Defendants' failure to disclose the proceedings was a ***material omission*** that rendered Defendants' statements ***materially misleading***. It was in this context that the Court distinguished *Ocugen*. *Id*. at *11 n.12.

In any event, the Court was not required to frame its materiality analysis around *Ocugen*. *See Blueprint Cap. Advisors, LLC v. Murphy*, 2023 WL 6875136, at *3 (D.N.J. Oct. 18, 2023) ("Courts in this district have consistently held that 'an argument is not

3

deemed overlooked simply because it is not directly addressed in a court's opinion.'"). Here, the Court not only *directly addressed Ocugen, but* it also explicitly considered both sides' arguments concerning the materiality of publicly available information. *E.g.*, *Kenvue*, 2025 WL 889640, at *9, *10. In sum, the Court sufficiently considered *Ocugen*, particularly when Defendants first raised it on reply. *See Mudey v. United States*, 2011 WL 2936781, at *1 (D.N.J. July 19, 2011) (no reconsideration where defendant sought "to reargue arguments made for the first time in his reply brief").

### 2. The Court Correctly Applied The Proper Materiality Standard

Even if the Court were to reconsider Defendants' arguments, it should reach the same conclusion. The standard for materiality as applied by the Third Circuit in the context of an inefficient market in *Adams Golf* applies here: "The standard test in securities law to determine the materiality of an omission is '***whether there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the <u>reasonable investor</u> as having significantly altered the total mix of information made available***.'" *In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 274 n.8 (3d Cir. 2004) (quoting *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002), itself quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)).

According to Defendants, this "total mix" standard requires a *per se* rule: if omitted information is publicly available in some way, then the omission cannot be material as a matter of law. Mot. 3-4. But this is inconsistent with both the language of

4

the standard and the manner in which the Third Circuit has applied it, especially in the context of an inefficient market. The standard hinges not just on whether information is "available" somewhere in the public domain, but whether the information is "***made*** available" to investors,[2] and, more importantly, whether the omitted information would have been viewed by a "***reasonable investor***" as having significantly altered the total mix of information "***made*** available." *Adams Golf*, 381 F.3d at 274 n.8. Omitted information that renders a statement misleading may be material *even if* that omitted information is publicly available somewhere, where that information is not widely known and/or was not disclosed in connection with the misleading statement.

A "reasonable investor" cannot be expected to know all publicly available information. To be sure, in an efficient market, a court may presume that all publicly available information is reflected in a stock's price, because that is the crux of the economic theory that plaintiffs rely on when alleging fraud-on-the-market. But in a pure Securities Act case where plaintiffs are *not* alleging an efficient market, the mere public availability of the omitted information does not automatically render an omission

---

[2] *Ocugen* asks only whether the omission "would have significantly altered the mix of information ***available*** to reasonable investors," *Ocugen*, 2024 WL 1209513, at *4, as opposed to the "total mix of information ***made available***," *Adams Golf*, 381 F.3d at 274 n.8. This distinction is subtle, but significant, particularly in an inefficient market. The articulation of the standard in *Adams Golf* is the same as that used by the Supreme Court in *TSC Industries* and by the Third Circuit in *NAHC*, and it is controlling here.

immaterial. *See Adams Golf*, 381 F.3d at 276 n.10; Opp. 26-36.[3]

In *Adams Golf*, the Third Circuit held that the defendant's disclosure of relevant facts in a press release issued a month before the offering materials did not render the omission of those facts from offering materials immaterial. *See* 381 F.3d at 276 n.10. In so holding, the Third Circuit emphasized a distinction between (i) information that is widely publicized and well-known to the market and (ii) information that is less well-known and publicized, even if publicly available. *See id.* The Third Circuit also stressed a distinction between (i) efficient markets that promptly digest publicly available information and reflect that information in the stock price and (ii) inefficient, pre-IPO markets where there is no presumption that public information is reflected in the price. *See id*. The Third Circuit held that it "***cannot conclude that the pre-IPO press release in this case***, issued a month before the offering materials were filed, ***was sufficient to inform the investing public of a gray market in Adams Golf equipment***." *Id.*

Defendants' argument that the above analysis was "dicta" and "not a holding" by the Third Circuit (Reply 13) is wrong. The Third Circuit's "conclu[sion]" that the press release was insufficient to inform investors of the omitted information, despite its public

---

[3] Even in an efficient market, the mere *availability* of information in the public domain is not sufficient to render an alleged misrepresentation or omission immaterial as a matter of law; instead, defendants "must prove that the information at issue was 'transmitted to the public with the degree of intensity and credibility sufficient to effectively counterbalance any misleading impression created by the insiders' one-sided representations.'" *The Winer Fam. Tr. v. Queen*, 2004 WL 2203709, at *4 (E.D. Pa. Sept. 27, 2004), *aff'd sub nom, Winer Fam. Tr. v. Queen*, 503 F.3d 319 (3d Cir. 2007).

6

availability, was indeed a holding. And the argument that the *Adams Golf* defendants raised, and the Third Circuit rejected, was identical to Defendants' argument here: that the omission of otherwise publicly available information is *per se* immaterial. *See* Appellees' Brief in *Adams Golf*, 2004 WL 3759839, at 34-35 (Jan. 13, 2004) ("this information was already public and therefore immaterial as a matter of law").

Defendants argued that the press release in *Adams Golf* was unlike the publicly available information in this case, because the information here consists of "multiple public filings by a federal agency." Reply 13. But reasonable investors would have no reason to examine the FDA's website for information about regulatory proceedings concerning PE when they had no reason to know about those proceedings in the first place. Opp. 31. The Court thus disposed of this argument, holding that "the mere fact that the FDA and NDAC were reviewing PE may have been crucial to a reasonable investor's decision to invest," but based on the information made available to investors, the Court could not "infer that a reasonable investor would know about the serious challenge to PE's effectiveness." *Kenvue*, 2025 WL 889640, at *11.

Defendants also argued that *Adams Golf* sustained the dismissal of certain claims concerning an alleged industry-wide oversupply of golf equipment, which was allegedly a trend "easily discernable from information already available in the public domain." Reply 12. But *Adams Golf* did not even accept plaintiffs' allegation that there was a known or knowable industry-wide trend of an oversupply. 381 F.3d at 279. Instead, the

Court merely held that *if* such a trend existed, defendants could not be faulted for failing to disclose it because, based on plaintiffs' allegations, it would have been easily discernable from publicly available information. *Id*. In any event, the Third Circuit's approach to public knowledge of industry trends has no bearing upon this case, which does not allege a failure to disclose the impact of industry-wide trends but rather alleges Defendants' failure to disclose specific adverse facts regarding PE.

Finally, Defendants argued that *Adams Golf* holds that only firm-specific information can be material and that information relating to its broader industry cannot be material. Reply 12-13. That is incorrect. *Adams Golf* held that "[w]hatever financial problems other manufacturers and retailers may have struggled with, the securities laws obligated Adams Golf to disclose material information concerning its own business and *not necessarily the details relating to its competitors*." 381 F.3d at 278. Here, Plaintiffs do not allege that Kenvue needed to disclose details about its competitors; they allege that Kenvue's statements about the effectiveness of its own products were misleading for failing to disclose the adverse studies and regulatory events concerning PE. That these studies and regulatory events *also* impacted other companies does not diminish their materiality to Kenvue.

In sum, *Adams Golf* holds that in an inefficient market, (1) there is no *per se* rule that publicly available information is always immaterial, and (2) in determining whether publicly available information renders an omission immaterial, a court may dismiss

8

only if the omitted information was widely disseminated and obvious to reasonable investors. 381 F.3d at 276 n.10. Nothing in *Ocugen* changes those core holdings.

**B.      The PE MDL Case Does Not Provide A Basis For Reconsideration**

Defendants' second purported basis for reconsideration is the decision in the PE MDL. Mot. 4-6. That decision does not warrant reconsideration. *First*, this Court did not overlook the PE MDL decision. The Court noted Defendants' NSA presenting the PE MDL decision and that Plaintiffs filed a response. *Kenvue*, 2025 WL 889640, at *1. The Court stated that it "carefully considered" all submissions. *Id.* Defendants argued in their NSA that Plaintiffs' allegations "cannot be squared with the PE MDL court's holding." NSA 2. Their Motion simply rehashes those rejected arguments.

*Second*, the PE MDL decision is not "controlling." L. Civ. R. 7.1(i). It is an out-of-circuit district court ruling that is currently under appeal. Even if the Second Circuit affirms, that appellate court's decisions are not binding on this Court.

*Third*, the Opinion does not create a "conflict of law" or "incompatible rules of law." Mot. 5-6. The labeling requirements under the FDCA are not identical with a company's disclosure obligations under the securities laws. NSA Response 1-2. They involve different statements aimed at different audiences and address different types of risks: medical risks and investing risks. *Id.* The statements found to be misleading by this Court are different from the statements found not to be misleading by the PE MDL court. For example, Defendants' statements represented not only that Kenvue's PE

9

products are effective, they represented that this effectiveness determination was supported by "[s]tudies sponsored by Johnson & Johnson Consumer Inc. and by third parties." ¶¶128, 138. The Court already explained why these statements are misleading *to investors*. *Kenvue*, 2025 WL 889640, at \*11, \*12. Contrary to Defendants' claims, nothing in the Court's Opinion requires drug manufacturers to alter their labeling, nor does it require companies to proclaim their own products are ineffective. Mot. 1, 4-5. As Plaintiffs previously argued, "Defendants were not required to confess that the underlying scientific evidence did not support their position. Simply disclosing the pendency of the NDAC meeting would have put investors on notice and allowed them to review the underlying petition and medical studies themselves so that they could make their own assessments about the dispute and the attendant risks." Opp. 37. The Court agreed. *Kenvue*, 2025 WL 889640, at \*10-11.

### C.    *Omnicare* Does Not Provide A Basis For Reconsideration

Finally, Defendants argue that the Opinion "cannot be squared" with *Omnicare*. Mot. 6 (citing *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 196 (2015)). *Omnicare* is controlling, but this Court did not overlook it; the Court correctly applied *Omnicare*. *Kenvue*, 2025 WL 889640, at \*9 (discussing *Omnicare*'s standard for materiality); *id.* at \*10 (rejecting Defendants' argument that the undisclosed PE studies were, in the words of *Omnicare*, just "some fact[s] cutting the other way"). Defendants merely disagree with the Court's application of *Omnicare*.

10

Defendants contend that the Court's ruling "requires disclosure of *every* contrary study in order to preclude litigation of good faith beliefs about the efficacy...of FDA-approved products." Mot. 8 (emphasis in original). But that is not what the Court held. The Court held that "***[a] defendant need not cite every existing study about a drug***, but it must provide sufficient information for an investor to be able to make an informed decision about where to invest its money." *Kenvue*, 2025 WL 889640, at *10.

The issue here was not the failure to disclose an outlier study, but the failure to disclose (i) the existence of multiple, well-designed studies and trials showing that PE was not effective, and (ii) that the FDA had initiated proceedings seeking to reclassify PE as not Generally Recognized as Safe and Effective. Opp. 11-12. The Court held that under these circumstances, Plaintiffs had adequately pleaded a "***serious challenge to PE's effectiveness***" that investors were entitled to know about. *Kenvue*, 2025 WL 889640, at *11.

Thus, contrary to Defendants' assertion that the Court adopted "a rigid, untenable rule" requiring a disclosure of every contrary study (Mot. 8), the Court held only that defendants must disclose ***material*** omissions, which requires a case-by-case analysis of the particular facts. This is consistent with both *Omnicare* and Third Circuit standards.[4]

---

[4] *See Omnicare*, 575 U.S. at 189 (opinion statement is actionable if it "***omits material facts***" about the issuer's knowledge concerning the opinion, and "***if those facts conflict with what a reasonable investor would take from the statement***"); *Adams Golf*, 381 F.3d at 274 (materiality "***is ordinarily an issue left to the factfinder***").

11

It is Defendants, not the Court or Plaintiffs, who seek a *per se* rule in contravention of these authorities.

## III.    THE COURT SHOULD DENY DEFENDANTS' § 1292(b) MOTION

"Interlocutory appeals are generally disfavored," *Cadillo v. Stoneleigh Recovery Assocs., LLC*, 2018 WL 702890, at *1 (D.N.J. Feb. 2, 2018), and should be granted only "sparingly." *Altisource S.A.R.L. v. Szumanski*, 2023 WL 6797695, at *1 (D.N.J. Mar. 15, 2023). Under § 1292(b), a district court may certify an order for interlocutory appeal if the order (1) "involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "The movant bears the burden of demonstrating all three criteria," but "even if all three criteria…are met, the district court may still deny certification, as the decision is entirely within the district court's discretion." *Altisource*, 2023 WL 6797695, at *1.

Defendants do not satisfy the requirements of § 1292(b) for any of their three arguments. ***First***, regarding *Ocugen*, they seek review of "[w]hether *Ocugen*'s materiality standard applies and demands treating information published by the FDA as available to reasonable investors." Mot. 8. This is not a pure question of law, but a mixed question of law and fact, and thus inappropriate for interlocutory review. *See Johnson v. Nat'l Collegiate Athletic Ass'n*, 108 F.4th 163, 183 n.1 (3d Cir. 2024) (Porter, J., concurring) ("At least eight of our sister circuits have acknowledged the

12

limitation of 28 U.S.C. § 1292(b) to ***pure questions of law***.").[5]

"Materiality is a mixed question of law and fact." *Weiner v. Quaker Oats Co.*, 129 F.3d 310, 317 (3d Cir. 1997). While the Third Circuit has permitted certain *per se* materiality rules in the context of an efficient market, it has eschewed such rules in the absence of an efficient market. *Compare Oran v. Stafford*, 226 F.3d 275, 282 (3d Cir. 2000) ("In *Burlington*...this Court fashioned a special rule for measuring materiality in the context of an efficient securities market.") *with Adams Golf*, 381 F.3d at 276 n.10 (in inefficient market, rejecting *per se* rule that publicly available information is immaterial); *see also In re Merck & Co., Inc. Sec. Litig.*, 432 F.3d 261, 274-75 (3d Cir. 2005) ("the *Oran–Burlington* standard applies only to efficient markets, a key ingredient missing in *Adams Golf*").

To the extent Defendants seek a pure rule of law that any omission of information published by the FDA is *per se* immaterial, Defendants fail to show substantial grounds for difference of opinion. Even *Ocugen*, which involved an efficient market, did not adopt such a strict rule. As this Court noted, *Ocugen*'s holding depended on the facts of that case, including that the defendant "disclosed a great deal of information about its

---

[5] *See also In re Schering-Plough Corp.*, 2010 WL 2546054, at *4 (D.N.J. June 21, 2010) (certification "inappropriate when the underlying order involves mixed questions of fact and law"); *Sun Life Assurance Co. of Canada v. Wells Fargo Bank, N.A.*, 2023 WL 3309355, at *3 (D.N.J. May 8, 2023) ("Legal questions in which the district court's discretion is necessarily intertwined with its understanding of the facts do not fall within the purview of § 1292(b).").

departures from FDA guidance." *Kenvue*, 2025 WL 889640, at \*11 n.12. In an inefficient market, *Adams Golf* sets the materiality standard. Defendants' disagreement "with the Court's application of the facts in the record to this well-settled legal standard is insufficient to find substantial ground for difference of opinion." *In re Direct Purchaser Insulin Pricing Litig.*, 2023 WL 3431213, at \*5 (D.N.J. May 12, 2023).

***Second***, regarding the PE MDL decision, Defendants seek review of "[w]hether statements that are not misleading under the federal food and drug laws can be misleading under the federal securities laws." Mot. 8. This is not a pure question of law. The statements on the labels of Kenvue's products are not the same as the challenged statements in its SEC filings. Applying the varying legal standards of the FDCA and the securities laws to differing statements presents a complex series of mixed questions of law and fact that are not appropriate for interlocutory review. Defendants also have failed to demonstrate substantial ground for difference of opinion, as this Court applied settled securities law principles to the facts of this case and correctly decided not to overlay a complex and contestable series of determinations from a different statutory regime with questionable relevance here. And an interlocutory appeal is unlikely to materially advance this litigation. The PE MDL decision is currently under appeal in the Second Circuit. For Defendants to be successful in appealing this issue, they would need to first obtain an affirmance of the PE MDL ruling in the Second Circuit, and then the Third Circuit would still need to address complex questions about the interplay of

14

the FDCA and the securities laws and the factual differences in the two cases. Judicial efficiency concerns, therefore, weigh against certification of an interlocutory appeal.

*Third*, regarding the application of *Omnicare*, Defendants seek review of "[w]hether opinions of safety or efficacy must disclose any contrary study." Mot. 8. Defendants' framing mischaracterizes the Court's Opinion. The Court did not hold that issuers must disclose "any" contrary study. The Court held that the specific omissions alleged here were material because the studies presented a "serious challenge to PE's effectiveness" and the FDA had initiated proceedings seeking to reclassify PE as not Generally Recognized as Safe and Effective. *Kenvue*, 2025 WL 889640, at *11. To the extent that Defendants frame this issue as a pure question of law (whether efficacy opinions must always disclose any contrary study), it is not a ***controlling*** question, because the Court's determination did not hinge on that question. The real question is whether the omissions were material under the particular circumstances of this case, which is a mixed question of fact and law that is inappropriate for interlocutory review.

Defendants have not shown a substantial ground for difference of opinion in this regard. They simply disagree with the Court's application of *Omnicare* to the facts of this case, which is not sufficient to show a substantial ground for difference of opinion. *See Direct Purchaser*, 2023 WL 3431213, at *5.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion should be denied in its entirety.

15

DATED: May 7, 2025                     Respectfully submitted,

**CARELLA  BYRNE  CECCHI  BRODY  & AGNELLO, P.C.**

By: *s/ James E. Cecchi*
James E. Cecchi
Donald A. Ecklund
Kevin G. Cooper
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
Email: jcecchi@carellabyrne.com

*Liaison Counsel for Plaintiffs*

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
Leanne H. Solish
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

*Lead Counsel for Plaintiffs*

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007

*Additional Counsel*

16

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of May, 2025, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*s/ James E. Cecchi*
James E. Cecchi