## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

IN RE KENVUE INC. SECURITIES LITIGATION

This Document Relates To: ALL CASES

Civil Action No. 3:23-cv-20998-ZNQ-JBD

Hon. J. Brendan Day

## STIPULATED PROTOCOL FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION

Lead Plaintiff Joseph Ditta and plaintiff David Gruthoff (together, "Plaintiffs") and Defendants Kenvue Inc., Johnson & Johnson, Thibaut Mongon, Paul Ruh, Heather Howlett, Larry Merlo, Richard E. Allison, Jr., Peter M. Fasolo, Tamara S. Franklin, Seemantini Godbole, Melanie L. Healey, Betsy D. Holden, Vasant Prabhu, Michael E. Sneed, Joseph J. Wolk, Goldman Sachs & Co. LLC, J.P. Morgan Securities LLC, BofA Securities, Inc., Citigroup Global Markets Inc., Deutsche Bank Securities Inc., HSBC Securities (USA) Inc., RBC Capital Markets, LLC, BNP Paribas Securities Corp., UBS Securities LLC, BBVA Securities Inc., ING Financial Markets LLC, Intesa Sanpaolo S.p.A, Santander US Capital Markets LLC, UniCredit US Capital Markets LLC, Academy Securities, Inc., Independence Point Securities LLC, Samuel A. Ramirez & Co., Inc., R. Seelaus & Co. LLC, and Siebert Williams Shank & Co. LLC (collectively, "Defendants," and together with Plaintiffs, the "Parties"), by and through their respective undersigned counsel,

1

hereby stipulate and agree to the following Stipulated Protocol for Discovery of Electronically Stored Information (the "ESI Protocol" or "Protocol").

## I.  GENERAL PROVISIONS

1.  This Protocol will govern discovery of ESI and hard copy documents in this case as a supplement to the Federal Rules of Civil Procedure, the Local Rules of the United States District of New Jersey (the "Local Rules"), and the Judicial Preferences of District Judge Zahid N. Quraishi and Magistrate Judge J. Brendan Day (together, the "Judicial Preferences"), and any other applicable orders and rules.

2.  The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout this matter. The Parties shall follow Local Rules and the Judicial Preferences with respect to any and all discovery disputes, including the requirement to meet and confer in person, via video-conference, or by telephone before raising a dispute with the Court.

3.  Unless otherwise agreed to or directed by the Court, each Party will bear the costs of collecting, processing and reviewing documents in that Party's possession, custody, or control according to this Protocol.

4.  Nothing in this Protocol shall be construed to affect the discoverability or admissibility of any document. All objections to the discoverability or admissibility of any document are preserved and may be asserted at any time in accordance with the applicable Federal Rules of Evidence, Federal Rules of Civil

Procedure, and/or Local Rules or Judicial Preferences.  For the avoidance of doubt, nothing in this ESI Protocol shall be interpreted to require disclosure of materials that a Party contends are protected from disclosure by the attorney-client privilege, the attorney work product doctrine, Confidential Supervisory Information ("CSI") or Suspicious Activity Report ("SAR") privileges, or any other privilege or immunity that may be applicable.

5.      Each production of ESI shall be accompanied by correspondence indicating the Bates range and any applicable passwords.

## II.    DEFINITIONS

1.      <u>Action</u>: means the above-referenced action.

2.      <u>Confidentiality Order</u>: means the Confidentiality Order entered in this Action on March 4, 2026, as amended by any subsequent order(s) of the Court.

3.      <u>Document</u>: has the meaning ascribed to it in Federal Rule of Civil Procedure 34(a)(1)(A). The term "Document" shall include Hard-Copy Documents and ESI as defined herein.

4.      <u>Email</u>: means electronic messages sent or received over the internet using simple mail transfer protocol or internally within an organization's mail service, including, but not limited to, Microsoft Exchange.

5.    Email Thread: means a single email conversation that starts with an original email (the beginning of the conversation) and includes all subsequent replies and forwards pertaining to that original email.

6.    ESI: an abbreviation of "electronically stored information," which has the meaning ascribed to in Federal Rule of Civil Procedure 34(a)(1)(A).

7.    Extracted Text: means text extracted from a Native Format file and includes (only to the extent reasonably available through the Producing Party's standard processing tools) at least all headers, footers, document body information, and any hidden text, if available. The extracted text shall contain the visible text content reflected in the Native Format file, including Hyperlink "anchor" text to the extent reasonably available, as defined herein. The extracted text must not include text of characters that were not part of the text of the original Native Format file, including but limited to, Bates numbers, endorsements, or redaction labels.  No obligation exists for the extracted text to include the text located at or within the document to which the "target" text, as defined herein, points or links.

8.    Go-Get: means a request to manually retrieve and produce a specifically-identified document, or small number of documents.

9.    Hard-Copy Document: means Documents existing in paper form at the time of collection.

10.     Hash Value: means the unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the data set. The most commonly used algorithms, known as MD5 and SHA, will generate numerical values so distinctive that the chance that any two data sets will have the same Hash Value, no matter how similar they appear, is less than one in one billion. "Hashing" is used to guarantee the authenticity of an original data set and can be used as a digital equivalent of the Bates stamp used in Hard-Copy Document productions.

11.     Hyperlink: means an HTML link from an electronic Document to another electronic Document, typically activated by clicking on a highlighted word or image on the screen, and includes both the "anchor" text (*i.e.*, the ordinarily visible, clickable text of the hyperlink, often presented in blue in the linking document) and, where reasonably available with automated processing, the "target" text (*i.e.*, the ordinarily invisible hypertext containing the Uniform Resource Locator ("URL") for the location of the linked document).

12.     Instant Messages: means real-time communications sent via chat client, short messaging service ("SMS"), Multimedia Messaging Service ("MMS"), or Rich Messaging Service ("RMS"), such as Slack, Microsoft Teams, Google Talk, Google Chat, Google Hangouts, Skype, Facebook Messenger, Instagram Messenger, Line, Wire, Signal, Telegram, Snapchat, Wickr, Discord, WhatsApp, Bloomberg

Messenger, WeChat, TikTok (Douyin), or other similar or proprietary instant messaging systems. For the avoidance of doubt, the inclusion of a platform in this definition does not reflect agreement by any Party, that such platform is reasonably accessible, used for substantive business communication, or subject to collection, search, or production absent further agreement or order.

13.    Load File: means an electronic file that is used to import all required production information into a document database, including, if available, document images, Extracted Text or OCR text, Native Format files where required by this ESI Protocol, and Metadata, as well as information indicating document breaks, and document relationships such as those between an Email or Instant Message and its attachments, and a document and information related to embedded content.

14.    Metadata: means (i) structured information about ESI that is created by the file system or application that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file, embedded in the Document or Email and sometimes modified through ordinary business use; (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system; (iii) information, such as Bates Numbers, created during the course of processing Documents or ESI for production; and (iv) information collected during the course of collecting

6

Documents or ESI, such as the name of the Media device on which it was stored, or the custodian or non-custodial data source from which it was collected. Metadata of the ESI describes, *inter alia*, the characteristics, origins, usage, and validity of the collected ESI.

15.    <u>Native Format</u>: means the format of ESI in the application in which such ESI was originally created.

16.    <u>OCR</u>: means the optical character recognition technology used to read Hard-Copy Documents or electronic images of Documents and output such Documents to a searchable text format.

17.    <u>Producing Party</u>: means any Party or Third Party in the Action that produces Documents.

18.    <u>Receiving Party</u>: means a Party in the Action to whom Documents are produced.

19.    <u>Responsive Document</u>: means any Document that is responsive to any discovery request or subpoena served on the Producing Party in the Action and which the Producing Party has agreed or been ordered to produce, subject to the limitations set forth in the Federal Rule of Civil Procedure and/or Court order.

20.    <u>Tagged Image File Format or TIFF</u>: refers to the CCITT Group IV graphic file format for storing bit-mapped images of ESI or Hard-Copy Documents.

21.    <u>Third Party</u>: Any other person/entity, other than a Party to this Action.

## III. PRESERVATION AND IDENTIFICATION OF POTENTIALLY RELEVANT INFORMATION AND ESI

The Parties acknowledge their obligation to take reasonable and proportional steps to preserve discoverable information in the Party's possession, custody, or control.

## IV. SEARCH, COLLECTION & REVIEW

A.    The Parties will meet and confer in good faith to discuss any methodologies to be employed for the collection and production of documents in response to any Fed. R. Civ. P. 34 request for production, such as the use of search terms, date ranges, electronic sources, or other filters. The reference to any particular platform, system, data type, or metadata type in this ESI Protocol or otherwise shall not be construed as an admission that any such platform, system, data type, or metadata type exists, is reasonably accessible, or is within the possession, custody or control of any Party.  The Parties may use advanced search, analytical, and retrieval technologies like predictive coding or other technology-assisted review ("TAR") in order to prioritize the review of or the grouping of documents requested or returned from the use of search terms, date ranges, electronic sources, or other filters as agreed to between the Parties. The Parties may also use TAR to reasonably exclude documents from review, provided that they disclose to the other Parties the tools used, the steps taken to validate the review process, and the parameters used to

8

obtain or calculate the level of recall. The Parties agree to meet and confer in good faith regarding concerns about the TAR methodology employed.

B.     The Producing Party, to the extent search terms are negotiated between the Parties, will, upon request and with respect to contested search terms, undertake reasonable efforts to provide reports identifying the "hit" count and unique hit count of documents, and documents including family members, for each such search term. The Parties acknowledge and agree that the mere fact that a document is hit or captured by the application or run of any agreed upon search terms or methodologies does not mean that the document is necessarily responsive to any discovery request or otherwise relevant to this Action. Rather, determinations of discoverability, responsiveness, and privilege shall be made by the Producing Party.

## V.     PRODUCTION FORMATS FOR DOCUMENTS FROM HARD COPY DOCUMENTS

A.     <u>Generally</u>: Except for redacted and logged documents as described in Sections VII and VIII.L of this ESI Protocol, *infra*, the Parties will produce documents originating from Hard Copy Documents in CCITT Group IV single-page TIFF format (black and white, 300 dpi). If an original document contains color, it need not be produced in color in the first instance. However, the Producing Party will honor reasonable requests for a color image, if color is necessary to understand the meaning or content of the document. Color documents shall be produced as single-page, 300 DPI JPG images with JPG compression and a high-quality setting

so as to preserve legibility. The Parties agree not to degrade the searchability or legibility of documents as part of the document production process.

B.     Document Unitization: In scanning paper Hard Copy Documents, each page of paper should be output to a single page TIFF file. Distinct, logical document breaks should be defined as such in a standard load file as described herein. In the case of an organized compilation of separate Documents (*e.g.*, a binder containing several separate Documents behind numbered tabs) the Document behind each tab should be scanned separately, but any document or family relationship among the scanned Documents in the compilation should be reflected in the data load file at the appropriate standard fields. Pages containing post-it notes or other detachable notes that obscure the underlying Document should be scanned once with the detachable note intact, and then again without it, and made part of the same Document. The Parties shall make reasonable efforts to unitize the Documents in accordance with this paragraph, but recognize that certain documents and categories of documents might not reasonably be scanned to comply.

C.     Load File: The Parties will provide an industry standard load file (consistent with the description contained in Section VI.A below) and with a Bates number field included in the load file to match text and metadata with TIFF/JPG images. With respect to hard copy documents, data on the load file will include the

10

following metadata or their equivalents (when available), as defined in Section VI of this Protocol:

    i.        BEGDOC;
    ii.        ENDDOC;
    iii.        BEGATTACH;
    iv.        ENDATTACH;
    v.        CUSTODIAN;
    vi.        CONFIDENTIALITY;
    vii.        PGCOUNT;
    viii.        REDACTED; and
    ix.        TEXTLINK.

## VI.   PRODUCTION FORMATS FOR ESI

A.    <u>Production Format Generally</u>: Except for redacted and logged documents as described in Sections VII and VIII.L of this ESI Protocol, *infra*, the Parties will produce documents originating as ESI in TIFF format, with the exception of spreadsheets, audio, and video files, which shall be produced in native format, or as otherwise provided for below. ESI shall be produced with extracted text, along with the below listed metadata fields, where reasonably available. If an original document contains color, it need not be produced in color in the first instance. However, the Producing Party will honor reasonable requests for a color image, if color is necessary to understand the meaning or content of the document. Color documents shall be produced as single-page, 300 DPI JPG images with JPG compression and a high-quality setting as to not degrade the original image.

TIFFs/JPGs will show track changes, comments, and speaker notes, where applicable, that would be visible to the reader using the native software that created the document. For example, TIFFs/JPGs of email messages should include the BCC line. If any imaged document does not accurately reflect the document as it was kept in the usual course of business, including all comments, edits, tracking, etc., the Producing Party will either produce the document natively, or else the Parties will agree to meet and confer in good faith on production format options. Subject to the caveat below, embedded files or objects shall be produced as attachments to the document that contained the embedded file or object, with the parent/child relationship preserved. The Parties agree that embedded files or objects need not be extracted as separate documents if the document containing the embedded files or objects is produced natively, or otherwise if the embedded files or objects are displayed in their entirety and legible in the parent document (*e.g.*, logos, icons, or images). Compressed file types (*e.g.*, .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted. The Parties will provide an industry standard load file, *e.g.*, DAT (Concordance Load File) or OPT (Opticon Load File).

B.    Metadata: Each of the Metadata and coding fields set forth below that can reasonably and technically be extracted or generated from a Document shall be produced for that Document. All ESI will be collected in a manner that preserves the

12

associated metadata intact (specifically including, but not limited to, the below-listed fields for "Created Date/Time" and "Last Modified Date/Time"). If the metadata fields listed below do not exist or are not reasonably accessible or available for any Documents produced, nothing in this Order shall require any Party to extract, capture, collect, or produce such data, with the exception of the following fields, if available: (a) BegBates; (b) EndBates; (c) BegAttach; (d) EndAttach; (e) All Custodian; (f) Redacted (Y/N); (g) Confidentiality; and (h) HashValue. Metadata shall be provided in a Concordance-format delimited file with a .DAT file extension and ASCII 020 and 254 delimiters for column break and text qualifier. The first line shall be the header with field names, and each subsequent line shall contain the fielded data for each Document. The Parties also agree that every production of previously unproduced Documents, the Metadata field values for each Metadata field header will be mapped to the same Metadata field source, unless otherwise agreed in writing. For redacted items which were originally ESI, all non-privileged metadata fields will be provided and will include all non-privileged, non-redacted data. Redacted documents shall be identified as such in the load file provided with the production.

To the extent reasonably available, with respect to ESI gathered from an individual's hard drive or network share, metadata sufficient to identify the individual custodian from whose hard drive or network share such ESI has been

13

gathered will be provided in the Custodian field. Data that is not collected from an individual's hard drive or network share and is not reasonably identifiable as to source will be designated as "company documents"[1] in the Custodian field.

Nothing herein shall require a Producing Party to create or produce Metadata that does not exist, cannot be generated by ESI processing software, or is not reasonably or technically collectable. The Parties agree, in particular, that Go-Get collections of small sets of documents do not require forensic-style collection to preserve all metadata. When the Producing Party is unable to produce metadata for a particular field or ESI document, the Receiving Party may request an explanation of that inability. The Parties shall then meet and confer to attempt to resolve the problems. With respect to ESI, data on the load file will include the following metadata fields or their equivalents (when non-privileged, reasonably collectable, and can be populated using automated techniques):

| Field Name | Description |
| --- | --- |
| BEGDOC | Begin Document Bates number |
| ENDDOC | End Document Bates number |
| BEGATTACH | Begin Bates number of family unit |
| ENDATTACH | End Bates number of family unit |
| CUSTODIAN | Individual from whom the document originated |

---

[1] For the avoidance of doubt, synonymous text may be used, *e.g.,* "Non-Custodial Data Source" or "NCDS."

| ALL CUSTODIAN | Name of the agreed-upon custodians, in addition to the primary custodian, from whose files the item would have been produced if it had not been de-duplicated |
|---|---|
| FROM | Author of the email message |
| TO | Recipient(s) of the email message |
| CC | Recipient(s) of "Carbon Copies" of the e- mail message |
| BCC | Recipient(s) of "Blind Carbon Copies" of the email message |
| DOCUMENT SUBJECT | Subject field extracted from the metadata of the native file |
| EMAIL SUBJECT | Subject field extracted from the metadata of an email file |
| DOCUMENT TITLE | The title of a document |
| DOCUMENT AUTHOR | Author field extracted from the metadata of the native file |
| FILE EXTENSION | File extension of a document |
| CREATED DATE/TIME | Date and time file was created |
| LAST MODIFIED DATE/TIME | Date and time document was last modified |
| EMAIL SENT DATE/TIME | Date and time email was sent |
| EMAIL RECEIVED DATE/TIME | Date and time email was received |
| DATE/TIME APPOINTMENT START | Start date and time of calendar appointment entry |
| DATE/TIME APPOINTMENT END | End date of calendar appointment entry |
| LAST EDITED BY | Name of the last person to edit the document from extracted metadata |
| PGCOUNT | Number of pages in a document (image records) |
| FILE SIZE | File size in bytes |
| LOGICALPATH | Original logical path location of the document in the repository from which it was collected. |
| FILE TYPE | File Type: email, image, spreadsheet, presentation  etc |

15

| MD5 HASH | Unique identifier of the file |
|---|---|
| FILE NAME | Original name of the file or subject of email, including file extension |
| CONFIDENTIALITY | User-generated field that will indicate confidentiality pursuant to the Confidentiality Order (*i.e.*, "CONFIDENTIAL" or ATTORNEYS' EYES ONLY"). Otherwise, blank |
| REDACTED | YES if applicable. Otherwise, blank. |
| TECHNICAL ISSUE | YES where slip sheet reads "Technical issue—file cannot be processed" pursuant to Section VIII.B below. Otherwise, blank. |
| TEXTLINK | Contains Path to .TXT files |
| NATIVELINK | Contains Path to native files |
| SOURCE | Physical location where documents were collected (e.g., Custodian's laptop, hard drive, shared drive cell phone) |
| ISEMBEDDED | Identifies if a document is embedded in another document. |

The Parties acknowledge and agree that not all Parties will populate each and every metadata field and that the contents of all fields that are populated are provided on an "as-is" basis and without any representation as to their accuracy or correctness.

C.    <u>Reproduction in Native Format</u>: The Parties further agree that to the extent any Party seeks production in native format of specifically identified ESI produced originally in TIFF form for good cause shown, the Producing Party shall respond reasonably and in good faith to any such request.

D.    <u>Databases</u>: To the extent a response to a non-objectionable discovery request requires production of discoverable electronic information contained in a database maintained in the normal course of business (*e.g.*, Oracle or SQL

databases), the Parties will meet and confer to discuss the most appropriate and cost-effective production format, which may include an export of data in database or delimited text file format, as database reports.

## VII.   PRIVILEGE & PRIVILEGE LOG

A.      The Parties agree to exchange privilege logs that comply with Federal Rule of Civil Procedure 26(b)(5) in accordance with any current or future agreements between the Parties on the timing of privilege logs.[2] Privilege Logs will not be produced later than 60 days prior to the deadline to complete fact discovery unless warranted based on the timing of the corresponding document requests or there is an agreement of the Parties. Any claim that produced documents are covered by the attorney-client privilege, work product doctrine, or other applicable privilege or immunity including, without limitation, the Confidential Supervisory Information ("CSI") and Suspicious Activity Report ("SAR") privileges ("Privileged Material"), any belief that such documents are not Privileged Materials, and any challenge to such claim shall be subject to the terms of the Stipulated Confidentiality Order agreed upon by the Parties and entered by the Court. The omission of a document from one or more privilege logs will not constitute a waiver of any applicable privilege/protection and the treatment of such material shall be in accordance with

---

[2] Under the Parties' Joint Proposed Discovery Plan (ECF No. 131), the Kenvue Defendants and J&J have agreed to a schedule for providing privilege logs.

Federal Rule of Civil Procedure 26(b)(5)(B) and the terms of the Parties' agreed Confidentiality Order.

B.      The Parties agree that certain privileged communications or documents need not be included in a privilege log: (a) privileged communications to or from outside legal counsel for the Parties in this Action that post-date the initiation of this Action; (b) privileged communications exclusively between inside counsel and outside legal counsel that post-date the initiation of this Action; (c) protected work product of counsel and Parties related to this Action that post-date the initiation of this Action; (d) any privileged, internal communications within a law firm or within a legal department of the Producing Party that post-date the initiation of this Action; (e) any privileged communications regarding litigation holds or preservation, collection, review, or production in this Action; and (f) any communication involving counsel or documents containing protected work-product of counsel that post-date the filing of this Action. The Parties will meet and confer in good faith regarding the scope of the privilege log should any issue arise. Further, the Parties agree that documents that have been redacted for privilege need not appear on a privilege log in the first instance so long as the reason for redaction is on the face of the document; to the extent the basis for the redaction is not apparent from the face

of the document, the Receiving Party may request additional information in order to assess the claim of privilege pursuant to Section VII.G.

C.     The Parties agree that, for each document withheld from production on the basis of attorney-client privilege, work product doctrine and/or any other applicable privilege, except as exempted above, the Producing Party will prepare a log containing the metadata fields listed below to the extent such information exists and has not been suppressed or redacted for privilege. The log should include the following information from the top line email (except as to xii and xiii below, only to the extent each can be populated using automated techniques):

     i.    Privilege log reference number;

    ii.    Bates number of the associated slipsheet;

   iii.    Author(s) (designating which, if any, are attorneys);

    iv.    Recipient(s), including copyee(s) and blind carbon copyee(s) (designating which, if any, are attorneys);

    v.    The file name, for non-email documents;

   vi.    The email subject, for email documents;

  vii.    The custodian(s) (designating which, if any, are attorneys);

 viii.    The sent date of email documents;

   ix.    The creation date, for non-email documents;

    x.    The file type;

xi.    MD5 HASH;

xii.    A brief description of the documents in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim; and

xiii.    The asserted basis for withholding.

D.    The Parties' privilege logs may depart from the instructions and format in VII.D through agreement of the Parties or order of the Court. All responsive Documents that are withheld on any basis by the Producing Party, except as exempted from logging as provided above, shall be given a Privilege Log Reference Number and shall be identified in the privilege log with that Privilege Log Reference Number. For the avoidance of doubt, non-responsive Documents will not be logged.

E.    If the Receiving Party reasonably requires further information than is provided in the privilege log, it shall explain in writing the need for such information and identify, by Privilege Log Reference Number or other unique identifier, each document for which it seeks this information. Within thirty (30) days, the Parties shall meet and confer to negotiate a mutually-agreeable compromise that would enable the Receiving Party to assess the claim of privilege. If the Parties cannot reach resolution, the Court will determine the matter.

F.    If the Receiving Party contests the privilege claim of any Privileged Material, the Receiving Party must notify the Producing Party in writing. The Parties

20

must meet and confer and make a good faith effort to cooperatively classify the challenged documents and ESI into categories that are subject to common factual and legal issues in so far as practicable. Thereafter, the Parties shall jointly request a conference with the Court to devise a plan for resolving the challenges.

G.      When the production or disclosure of any Privileged Material is discovered by or brought to the attention of the Producing Party or the Receiving Party, the treatment of such material shall be in accordance with Federal Rule of Civil Procedure 26(b)(5)(B), and the Parties' agreed Confidentiality Order, which in part states that Federal Rule of Evidence 502(b) is inapplicable to any disclosure of privileged information except as otherwise provided below, and that the maximum protection allowed by Federal Rule of Evidence 502(d) shall be provided. Within ten (10) business days of the Producing Party's request to return or destroy such Documents, the Producing Party shall produce a privilege log with respect to the disclosed materials. Nothing herein restricts the right of the Receiving Party to challenge the Producing Party's claim of privilege as to or designation of Privileged Material after receiving notice of the production or disclosure of any information, document, or thing that is subject to a claim of attorney-client privilege or work-product protection. Federal Rule of Evidence 502(b), rather than 502(d), shall be deemed to apply to the disclosure of privileged document if the Producing Party does not provide notice pursuant to this Paragraph within 14 days after that document is

21

marked as a deposition or mediation exhibit, or filed with the Court (except for the purposes of challenging a claim of attorney-client privilege or work product protection), in this Action by any Party.

## VIII.  MISCELLANEOUS PROVISIONS

A.      Additional Custodians or Data: The Parties will endeavor to seek documents or data from all discoverable repositories of information during the parties' initial discussions on the parameters of such discovery, but reserve the right to request inclusion of additional custodians or non-custodial data sources whose relevance was first discovered via documents or data produced, or testimony given, or for other good cause shown. Any such requests shall be made within a reasonable time after discovery of the basis for the request, and no later than a reasonable time to allow for fulfilment prior to the close of fact discovery, and shall be subject to any further agreement by the Parties, the Federal Rules of Civil Procedure (including Rule 26(b)(1)), the Local Rules, and Judicial Preferences. The Producing Party may object to any such request, and the Parties will meet and confer to resolve the matter. If the Parties cannot reach resolution, the Court will determine the matter. The Parties further agree that this paragraph does not authorize the noticing of depositions, or the reopening of depositions, beyond the close of fact discovery without permission of the Court or agreement of the Parties.

B.      Additional Formatting Processes: Any Producing Party may De-NIST their electronic collections before searching and review using the then-current NIST list published by the National Institute of Standards and Technology. To the extent that relevant ESI cannot be rendered or reviewed without the use of proprietary or special software, the Parties shall meet and confer.

If a member of a document family that has otherwise been determined to be responsive cannot be technically processed (*e.g.*, unsupported file format, file corruption, inaccessible password-protected document) using automated means, those technical problems shall be identified and disclosed to the Receiving Party by production of a Bates numbered slip sheet that states "Technical issue—file cannot be processed." No such identification/disclosure or slip sheets are required for files generated by or mail servers, *e.g.*, ATT* and .htm* attachments to email messages. A Receiving Party thereafter may raise with the Producing Party any questions or concerns, and the Parties shall meet and confer to attempt to resolve any issues.

C.      Bates Numbering: All documents and ESI determined to be responsive to any discovery request shall be assigned sequential Bates numbers or Privilege Log Reference Numbers for documents or ESI withheld on grounds of privilege, work product protection, or any other basis. Once assigned, a Bates number or Privilege Log Reference Number will not be reassigned, or renumbered during the course of discovery. The Parties shall assign a Bates number to individual pages of TIFF

documents and a Bates number to each document produced in native format. Bates numbers and Privilege Log Reference Numbers shall be unique across the entire document production and sequential within a given document. All volumes of production shall be identified by the same Bates prefix and a numerical sequence. Re-produced documents shall include their original Bates numbers, if any.

D.    Privilege Log Reference Number: The Parties shall assign a Privilege Log Reference Number to each withheld document. The Privilege Log Reference Numbers shall be unique across the entire document production and shall not be reassigned. If a document that was previously withheld is later produced, the Producing Party will provide a chart containing the Privilege Log Reference Number and the associated Bates Number(s) (along with other metadata fields) for each previously withheld document at the time of production. The Producing Party will also produce an amended privilege log that will skip or otherwise contain a placeholder for any previously withheld document and will in no circumstances reassign a Privilege Log Reference Number.  In addition to assigning Bates number(s) to the previously withheld document, the Producing Party will stamp previously withheld documents with the Privilege Log Reference Number.

E.    Confidentiality Designations: If a document or other ESI has a confidentiality designation, the designation shall be stamped on the face of all TIFF images pertaining to such document pursuant to the Confidentiality Order. If the

24

Receiving Party believes that a confidentiality designation obscures the content of a document, then the Receiving Party may request that the document be produced with the confidentiality designation in a different position. No Party may attach to any filing or any correspondence addressed to the Court (including any Magistrate Judge), or any adverse or third party, or submit as an exhibit at a deposition or any other judicial proceeding, a copy (whether electronic or otherwise) of any native format document produced by any Party without ensuring that the corresponding Bates number and confidentiality legend, as designated by the Producing Party, appears on the Document or in the filename, if used in native format. For each document that is marked confidential, a confidentiality field will be populated with the word "Confidential" or "Attorneys' Eyes Only" in the .DAT file.

F.    De-Duplication and Document Families: The Parties will perform de-duplication of ESI within and across custodians according to MD5 hash, SHA-1 hash, and/or SHA-256 hash values, at a family level and will produce only a single copy of identical ESI, except where de-duplication would break up document families. De-duplication shall not break up document families. The custodian associated with the first copy of a document processed will be considered the primary custodian for that document (the custodian who will be used as the basis for determining which other collected documents are duplicates). The Producing Party shall produce an "All Custodian" metadata field (or equivalent) with each production

as specified in Section VI above which lists every custodian or source who or which possessed a duplicate document. If the Parties de-duplicate ESI, they shall provide custodian associations in a semi-colon delimited field that includes duplicate custodian name information (formatted as LAST_NAME, FIRST_NAME). If additional documents are produced after substantial completion of document discovery, the Producing Party shall produce an overlay that provides an updated "All Custodian" field at the time new productions are made.

A Producing Party may employ email threading to review and produce only the most recent or most complete email containing the prior thread of emails, as well as all attachments appended at any point within the history of the thread, and to exclude email segments constituting exact duplicates of prior email text within the produced string, subject to the following conditions:

- The most-inclusive email will contain an "All Participants" metadata field identifying participants in lesser-included emails. This field will be provided either with the production of the most-inclusive email or, in the event of a fully withheld thread, on the privilege log.

- Any email within a thread that contains a unique attachment (an attachment that does not share an identical hash value with an attachment contained earlier in the same email thread) will be produced or withheld separately. Accordingly, the only attachments that may be excluded through email threading are those that are exact duplicates of attachments from earlier in the thread.

- The Receiving Party may make reasonable requests for individual lesser-included emails and attachments and the Producing Party shall cooperate reasonably in responding to such requests if the requested

lesser-included emails and attachments otherwise would have been subject to production.

- The sender, recipients, date, and time will be left unredacted for each email in the thread. Redactions of subject lines for emails within a thread, if any, would be subject to this protocol's conditions on redactions, *infra*.

If there are any handwritten notes, or any other markings, on a document, it shall not be considered a duplicate. Any document that contains an alteration, marking on, or addition to the original document shall be treated as a distinct version, and shall be produced as such. These alterations include, but are not limited to, handwritten notes, electronic notes/tabs, edits, highlighting or redlining.

For purposes of production, and to the extent feasible on an automated, scalable basis with existing technology, responsive documents should include all parent items (mail, calendar, contacts, tasks, notes, etc.) and child files (attachments of files to email to internal or nonpublic documents, or other items), with the parent/child relationship preserved.

G.    Hyperlinked Documents: The Parties agree that where any Document contains a URL reference ("hyperlink" or "pointer") to a related document stored in a Cloud-based repository (including, *e.g.*, Google Drive/Docs/Sheets, Microsoft OneDrive/SharePoint, Citrix FileShare, Dropbox, Box, or any similar collaboration or file-sharing platform) that is not otherwise produced as an attachment, the Receiving Party may make reasonable, targeted requests for the production of those

hyperlinked documents. The Producing Party shall produce the requested hyperlinked documents unless the documents are privileged or identifying and/or retrieving those documents would be unduly burdensome or not proportional to the needs of the Action. The Parties acknowledge that hyperlinks may be broken or otherwise unavailable, and that the current version of the hyperlinked document may differ from the version of the document at the time the hyperlink was sent. The Producing Party makes no representation that the recipient(s) of a hyperlink ever actually opened or viewed the hyperlinked document.

H.      Encryption: The Parties will make reasonable efforts to ensure that encrypted or password-protected Documents are successfully processed for review and production under the requirements of this Order. To the extent encrypted or password-protected ESI are successfully processed, the Parties have no duty to identify further the prior encrypted status of such documents. If Documents are not successfully processed despite use of reasonable efforts, a placeholder TIFF image will be produced stating the file is password protected. Upon request from either Party, the Parties shall meet and confer in good faith regarding reasonable efforts or mechanisms to remove such security protection or the production of available Metadata.

I.      Responsive ESI Discovered Outside of Search Methodology: Notwithstanding any of the foregoing, if any Party identifies ESI or Documents that

are reasonably necessary and proportionate and subject to discovery in this matter outside of the search methodology(ies) agreed to by the Parties, it shall produce all such Documents to the extent required under the Federal Rules of Civil Procedure, except any that must be withheld or redacted on the basis of privilege, work product, or other grounds. The Parties acknowledge that identification or production of such materials shall not be construed to expand the scope of agreed discovery obligations or impose a duty to conduct additional searches beyond those already agreed.

J.      ESI Not Required: The Parties agree that the following ESI does not require preservation, collection, review, or production because they are either not reasonably accessible or because the remote possibility of additional relevant information existing in not reasonably accessible sources is substantially outweighed by the burden and cost of preservation, collection, review, and production, provided, however, that nothing herein shall prevent a Party from subsequently requesting that Documents from the sources identified below be preserved and produced if specific facts demonstrate a particular need for such Documents that justifies the burden of preservation and retrieval:

  i.      Deleted, shadowed, damaged, residual, slack, fragmented, or other data on hard drives, solid-state drives (SSDs), or similar physical media, and which are only accessible by forensics;

  ii.     Random access memory (RAM), temporary files, or other ephemeral data that is difficult to preserve without disabling the operating system;

29

iii.  On-line access data such as temporary Internet files, history, cache, cookies, and the like;

iv.  Data stored on photocopiers, scanners, and fax machines;

v.  Data in metadata fields that are frequently updated automatically, such as last-opened dates;

vi.  Data maintained or duplicated in any electronic backup system for the purpose of system recovery or information restoration, including, but not limited to, system recovery backup tapes or other media, continuity of operations systems, and data or system mirrors or shadows, if such data are routinely purged, overwritten, or otherwise made not reasonably accessible in accordance with an established routine system maintenance policy;

vii.  Server, system, network, or software logs;

viii.  Data remaining from systems no longer in use that is unintelligible on the systems in use;

ix.  Video surveillance data;

x.  Email, calendars, and contact data sent to or from mobile devices (*e.g.*, iPhone, iPad, Android, and Blackberry devices), provided that a copy of all such electronic data is saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage);

xi.  Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report;

xii.  Software files included on the National Institute of Standards and Technology (NIST) Modern RDS (minimal) list obtained from https://www.nist.gov/itl/ssd/software-quality-group/national-software-reference-library-nsrl/nsrl-download/current-rds;

xiii.  Structural files not material to individual file contents (*e.g.*, .CSS, .XSL, .DTD, etc.);

xiv.  Operating System files that do not store user-created content (*e.g.*, CAT, DLL, DMP, EXE, FON, PNF, OPS, SYS, etc.); and

xv.   Application source code, configuration, and other similar files necessary for the function of an application that do not store user-created content during ordinary use (*e.g.*, BAK, BIN, CFG, DBF, DAT, JS, JAR, LUA, MSB, RES, WINNT, YTR, etc.).

Additional categories of ESI may be added to the list above through agreement of the Parties or through an order of the Court.

K.   <u>Preservation of Parent-Child Relationships</u>: The Parties shall use reasonable efforts (*e.g.,* feasible on an automated, scalable basis with existing technology) to preserve parent-child relationships (the association between an attachment and its parent document). The Parties will provide a BEGATTACH and ENDATTACH (or equivalent) for each produced attachment in the load file. If any member of a document "family" (*e.g.*, an email attachment) is withheld as privileged, then the producing party shall produce a one-page slipsheet TIFF image stating, "Withheld on Privilege Grounds" and bearing a unique Bates number.

L.   <u>Redactions</u>: The permissible bases upon which responsive documents may be redacted include the attorney-client privilege, attorney work product doctrine, the CSI privilege, the SAR privilege, other recognized protections or privileges under applicable law, and the presence of the following personally sensitive or identifiable information: bank and brokerage account numbers; passport numbers; driver's license numbers; medical records; social security numbers; personal addresses; personal telephone numbers; and the names of minor children. If, during the course of discovery, a Producing Party seeks to redact documents on a

basis not enumerated earlier in this paragraph, or seeks to redact personally sensitive or identifiable information not enumerated earlier in this paragraph, the Parties will meet and confer regarding it before such redactions are made. For redacted items that were originally ESI, all metadata fields noted in this Protocol that do not contain privileged or protected information will be provided and will include all non-redacted data. The Parties will produce redacted documents in TIFF format with corresponding searchable text and associated metadata for the documents, ensuring the redacted content is fully protected from disclosure. To the extent spreadsheets contain redacted text, the Parties shall provide a copy of the native file with redactions.

M.    <u>Processing Specifications</u>: The Producing Party will generate and preserve the MD5, SHA-1, or SHA-256 hash values of all ESI based on the Native Format file. Where Documents are not otherwise produced natively, all TIFF images shall display track changes, comments, speaker notes (including, where available, the user making the change/comment/note and the date and time thereof), hidden text, and strikethrough text as displayed in the Document, regardless of the display setting for this information as last saved by the custodian, to the extent reasonably possible. Producing Parties shall make reasonable efforts to process all ESI with a single time zone and a date and time setting that is consistent across all of the Parties'

productions. The Parties agree to meet and confer in good faith with regard to any issues arising from this aspect of production.

N.    Production Media: The Producing Party shall produce Document images, Native Format files, load files, and Metadata via secure file transfer protocol ("FTP") or physical media ("Production Media"). For physical media, each piece shall include a unique identifying label corresponding to the identity of the Producing Party (*e.g.*, "Kenvue"), the sequential production number (*e.g.*, "PROD004"), and the Document Number ranges of the Documents in that production (*e.g.*, "KENVUE00000123 - KENVUE00000456"). If the Production Media includes any confidential information protected under the Confidentiality Order, the label on such Production Media shall indicate that the Production Media includes information so designated as required under the terms of the Confidentiality Order. Production Media shall include text referencing the case name and number. Further, any replacement Production Media shall cross-reference the original Production Media, clearly identify that it is a replacement, and cross-reference the BEGDOC and ENDDOC range that is being replaced. All Production Media capable of write protection should be write-protected before production. All Production Media may be encrypted, with the Producing Party to provide a decryption key under separate cover at the time of production.

O.    <u>No Designation of Discovery Requests.</u> Absent good cause, productions of hardcopy documents and ESI in the reasonably usable form set out in this protocol, need not be organized and labeled to correspond to the categories in the requests.

P.    <u>Third Party Documents and ESI</u>: A Party that issues a subpoena upon any third-party ("Issuing Party") shall include a copy of this Protocol and the Confidentiality Order with the subpoena. The Issuing Party shall produce a copy to all other Parties of any ESI or hard copy (including any metadata) obtained under subpoena to a third party. If a third-party production is not Bates-stamped, the Issuing Party will endorse the non-Party production with unique Bates prefixes and numbering scheme prior to reproducing them to all other Parties.

## IX.    MODIFICATION

This protocol may be modified by written agreement of the Parties or by the Court for good cause shown.

Dated: March 3, 2026

Respectfully Submitted,

/s/ James E. Cecchi
**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**
James E. Cecchi
Donald A. Ecklund
Kevin G. Cooper
5 Becker Farm Road

/s/ David R. Kott, Esq.
**McCARTER & ENGLISH, LLP**
David R. Kott, Esq.
Joseph G. Braunreuther, Esq.
Four Gateway Center
100 Mulberry Street

34

Roseland, NJ 07068
Telephone: (973) 994-1700
jcecchi@carellabyrne.com

*Liaison Counsel for the Proposed Class*


**GLANCY PRONGAY WOLKE & ROTTER LLP**
Kara M. Wolke (*pro hac vice*)
Leanne H. Solish (*pro hac vice*)
Christopher R. Fallon (*pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com


*Lead Counsel for Plaintiffs and the Proposed Class*

Newark, NJ 07102
(973) 622-4444
dkott@mccarter.com
jbraunreuther@mccarter.com


*Counsel for Kenvue, the Individual Defendants, and Johnson & Johnson*


**SIDLEY AUSTIN LLP**
Kristen R. Seeger (*pro hac vice*)
John M. Skakun III (*pro hac vice*)
Maseeh Moradi (*pro hac vice*)
One South Dearborn Chicago, IL 60603
(312) 853-7000
kseeger@sidley.com
jskakun@sidley.com
mmoradi@sidley.com
*Counsel for Kenvue, the Individual Defendants, and Johnson & Johnson*


*and*


*/s/ Eric D. Stolze, Esq.*
**PAUL HASTINGS LLP**
Jane H. Yoon, Esq.
Barry G. Sher, Esq. (*pro hac vice*)
Jennifer L. Conn, Esq. (*pro hac vice*)
200 Park Avenue
New York, NY 10166
(212) 318-6000
janeyoon@paulhastings.com
barrysher@paulhastings.com
jenniferconn@paulhastings.com


Eric D. Stolze, Esq. (*pro hac vice*)
1197 Peachtree Street N.E.
Suite 200
Atlanta, GA 30361
(404) 815-2400

ericstolze@paulhastings.com

*Counsel for the Underwriter Defendants*

**IT IS SO ORDERED** this 4th day of March, 2026.

_____
J. BRENDAN DAY
UNITED STATES MAGISTRATE JUDGE